ADAMS et al., Appellants,

v.

ALUCHEM, INC., Appellee.

[Cite as *Adams v. Aluchem, Inc.* (1992), 78 Ohio App.3d 261.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910504.

Decided Sept. 9, 1992.

*Clements, Mahin & Cohen, Edward Cohen* and *Gwendolyn S. Barnhart,* for appellants.

*Graydon, Head & Ritchey, Jean M. Geoppinger* and *Daniel E. Burke,* for appellee.

*Per Curiam.*

This is an appeal from a grant of summary judgment in favor of the defendant-appellee, Aluchem Inc. ("Aluchem"), in an intentional tort action brought by the plaintiffs-appellants, James C. and Carla R. Adams. On appeal, the Adamses advance a single assignment of error in which they challenge the entry of summary judgment upon the basis that the evidence of record creates genuine issues of material fact as to whether James Adams's injury resulted from intentional conduct attributable to Aluchem. We find that this challenge is well taken and reverse.

James Adams ("Adams") was employed as a mechanic for Aluchem when he was instructed to repair a drag conveyor by installing director plates onto the system. While Adams was busy on the third floor bolting down one of the plates, another employee on the first floor activated the conveyor system's gear mechanism. Adams's left wrist got caught in the mechanism, pulling his arm into the housing and amputating it at the shoulder.

Aluchem, in its motion for summary judgment, presented the affidavit of Aluchem's vice-president of manufacturing, Ronald Bell, who stated that he conducted his company's investigation of the accident. He stated that the drag conveyor system was located on the third floor but was operated by stop and start buttons which were located on the first floor. He stated further that, attached to the conveyor on the third floor, located no further than eight feet from the location where Adams was working at the time of the accident, was a safety disconnect switch. According to Bell, the safety disconnect switch was conspicuous and clearly visible. Bell stated that Adams had been trained in the technique of locking out machinery prior to beginning maintenance work, and that Adams was aware that there was a disconnect device for every motor on equipment in the plant. Bell asserted that, had the safety disconnect switch been engaged, the accident would never have occurred. According to Bell, the safety disconnect switch was tested after the accident and found to be in working order.

Bell stated additionally that, prior to Adams's accident, Aluchem had never had an employee injured while operating or performing maintenance on the drag conveyor. He asserted that, prior to the accident, Aluchem had never been advised by any employee of potential dangers associated with the drag conveyor. Bell also stated that, approximately two days before the accident, Adams was working on another piece of machinery with other employees and was instructed to, and did, use the lock-out features while repairs were being made. Bell stated that since 1980 Aluchem had submitted to inspections of its facility by the Ohio Industrial Commission's Division of Safety and Hygiene, which had never made safety recommendations regarding the conveyor.

In an affidavit attached to his memorandum opposing summary judgment, Adams stated that it was only after the accident that he learned that there was a "main disconnect" on the third floor, having received no previous information or training from Aluchem regarding the disconnect. He stated that there was no "lock out devise [sic] system" or locks in use throughout his employment at Aluchem, nor were there any warning tags on the equipment. He stated, furthermore, that, at the time of the accident, the conveyor did not have any type of screens, guards, or other manner of protective covering over the drive chain and gear mechanisms, and that there was no means to disengage the drive chain and gear mechanism from the power supply where the drive chain was exposed or at the pinch point. He asserted that there was "no guard anywhere on the third floor for use on the drag conveyor at the time of the accident." Finally, he proffered that the company did not provide "training or tutorship for working on and/or repairing the conveyor system," and that there was "no discipline imposed by the company

in regard to adherence by the employees to safety practices." Adams stated that he was told to perform the job, but was not told how to accomplish it.

Adams further submitted in his memorandum opposing summary judgment an exhibit consisting of a "Citation and Notice of Penalty" from the United States Department of Labor, OSHA. This document, dated the day after the accident, found Aluchem in violation of federal regulations due to the fact that "[t]hree (3) disconnect boxes located on the third floor of the Raymond Mills Building were not marked to indicate their purpose."

The Adamses' intentional tort claim is governed by *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, wherein the Ohio Supreme Court set forth in paragraphs five and six of the syllabus the necessary elements of an employer's intentional tort: First, the evidence must demonstrate that the employer had knowledge of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; second, the evidence must show knowledge by the employer that if the employee is subjected by his employment to such dangerous condition, then it is substantially certain that harm to the employee will occur; finally, the evidence must show that, under such circumstances and with such knowledge, the employer did require the employee to continue to perform the dangerous task.

Proof of these elements may be by circumstantial evidence. See *Osona v. Art Woodworking & Mfg. Co.* (Aug. 16, 1989), Hamilton App. No. C–880521, unreported, 1989 WL 92081. "If an employee can establish that the employer was aware of the risk ultimately causing the injury and that the injury was substantially certain to occur as a result of that risk, an inference can be drawn that the employer appreciated the risk of harm giving rise to substantial certainty of injury." *Id.* Furthermore, the law treats the employer as if it had desired to produce the result if he knows that an injury will be substantially certain to result and nonetheless still proceeds. *Van Fossen, supra,* paragraph six of the syllabus.

Construing the evidence most strongly in the Adamses' favor, as is required by Civ.R. 56, we hold that the granting of summary judgment was improper. Genuine issues of material fact remain for trial, and only upon resolution of these factual issues can it be determined what level of known risk Adams was exposed to, and whether that risk is sufficient to meet the test of *Van Fossen, supra.*

Accordingly, the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

DOAN, P.J., KLUSMEIER and UTZ, JJ., concur.