[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 482.]

HANNAH, ADMR., APPELLANT, *v.* DAYTON POWER & LIGHT COMPANY, APPELLEE.

[Cite as *Hannah v. Dayton Power & Light Co.*, 1998-Ohio-408.]

*Employer and employee—Employer requires employee to perform a dangerous task—Requirements employee must satisfy in order to prevail against employer for an intentional tort—Sufficient evidence is presented to generate a triable issue whether employer had knowledge of a dangerous condition and of a substantial certainty of harm to employee, when.*

(No. 97-783—Submitted March 24, 1998—Decided August 5, 1998.)

APPEAL from the Court of Appeals for Montgomery County, No. 16209.

————————————

{¶ 1} This appeal stems from the death of Dayton Power & Light ("DP & L") employee Paul Hannah. Decedent Hannah, as a member of DP & L's Killen Station rescue team, died while attempting a vertical rescue of two men stranded at the four-hundred-fifty-foot level of a nine-hundred-foot smokestack at DP & L's Killen Electric Generating Station. The rescue attempt was prompted when a faulty elevator inside the smokestack became stuck just above the four-hundred-fifty-foot level, stranding Roy Douglas Horsley, a subcontractor's employee. Horsley climbed out of the elevator and down the attached ladder to a landing just below. Horsley then called for assistance. Using a ladder, rope, and harness, DP & L employee Mike Kelly climbed up to Horsley, but was unable to start the elevator. Exhausted and overcome by the extreme heat inside the stack, Kelly climbed out onto the platform and called his supervisor, and DP & L's control room operator, who had monitored the call. The control room operator sounded the emergency alarm to summon DP & L's Killen Station rescue squad to the scene.

**{¶ 2}** The Killen Station rescue squad was formed by DP & L in response to federal regulations that addressed the need for rescue teams on power plant premises. In June 1994, the squad was composed of nine volunteers. The squad received rescue training, primarily for rescues in confined spaces, *i.e.,* rescues of persons stranded in pits, wells, etc. The training was paid for by DP & L and occurred on the plant premises.

**{¶ 3}** On the day in question, DP & L employees who were members of the Killen Station rescue team, including decedent Paul Hannah and others, responded to the alarm. They gathered equipment and met at the base of the smokestack. Team member Gary Nibert said that he was physically unable to climb the ladder, and asked Hannah whether he could perform the rescue. Hannah agreed, and climbed to the four-hundred-fifty-foot level and then onto the elevator to check on co-employee Kelly. The two of them attempted to repair the elevator, but to no avail. After about twenty or thirty minutes, Kelly came down to the landing. Hannah followed, but collapsed upon reaching the landing. Despite Kelly's and Horsley's attempts to rouse him and cool him down, Hannah remained unresponsive.

**{¶ 4}** Kelly and Horsley managed to rappel to the ground together using a harness and rope. However, since Hannah had to be left on the platform, additional rescue workers were summoned from DP & L's rescue squad at J.M. Stuart Electric Generating Station, located seventeen miles away. Unlike the Killen Station team, which had been trained largely in confined space rescues, the Stuart Station rescue squad had trained more extensively in vertical rescues, *i.e.,* rescues of persons stranded in high places. When members of the Stuart Station team could not resuscitate Hannah, they lowered him to the ground. Hannah was rushed to the hospital, where he died of hyperthermia.

**{¶ 5}** Hannah's surviving spouse, Trisha E. Hannah, plaintiff-appellant, brought this lawsuit against defendant-appellee DP & L, alleging *inter alia* that DP

& L committed an intentional tort by requiring the decedent to attempt a vertical rescue of individuals stranded at the four-hundred-fifty-foot level of the plant's smokestack.[1] DP & L filed a motion for summary judgment, which the trial court granted. The court reasoned that the decedent had volunteered to perform the rescue. Since there was no evidence from which reasonable minds could conclude that DP & L required the decedent to perform the rescue that led to his death, there was no showing of an intentional tort. The court of appeals affirmed on the same grounds.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal.

––––––––––––––––––

*Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, D. Arthur Rabourn* and *Theresa L. Groh*, for appellant.

*Furnier & Thomas, Scott R. Thomas* and *Sean D. McMurtry*, for appellee.

––––––––––––––––––

**FRANCIS E. SWEENEY, SR., J.**

{¶ 7} In *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, this court first recognized an intentional tort exception to the workers' compensation exclusivity doctrine by allowing employees to bring an intentional tort lawsuit against their employers. We later defined the term "intentional tort" in *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046. Adopting 1 Restatement of the Law 2d, Torts (1965), Section 8A and Prosser & Keeton, Law of Torts (5 Ed.1984) 36, Section 8, we stated that an intentional tort is "an act committed with the intent to

––––––––––––––––––

1. Plaintiff also named as defendants Fluor Daniel, Inc. and various elevator companies.

injure another, or committed with the belief that such injury is substantially certain to occur."[2] *Jones* at paragraph one of the syllabus.

**{¶ 8}** In subsequent decisions, we focused on what proof is necessary to establish intent on the part of an employer. In *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, we held that the proof required to establish an intentional tort must be beyond that required to prove negligence or recklessness. *Id.* at paragraph six of the syllabus. We set forth a three-part test an employee must satisfy in order to prevail against his or her employer for an intentional tort. *Id.* at paragraph five of the syllabus. This test was modified in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, where we held that the employee must prove "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Id.* at paragraph one of the syllabus.[3] At issue in this case is the third prong of the *Fyffe* test, and whether the entry of summary judgment was proper.

---

2. In response to this decision, the General Assembly enacted R.C. 4121.80, which attempted to restrict the scope of employer intentional torts. However, in *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, this court found that R.C. 4121.80 was unconstitutional in its entirety. *Id.* at paragraph two of the syllabus. In response to *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the General Assembly subsequently enacted R.C. Chapter 2745, effective November 1, 1995 (after the filing of this action), as a further attempt to expressly overrule various decisions, including *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572; *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046; *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489; and *Fyffe, supra*. See Am.H.B. No. 103, Section 3, 146 Ohio Laws, Part I, 758.

3. In *Fyffe*, an injured employee brought an intentional tort action against his employer for allegedly removing a safety guard and then directing him to clean the unguarded machine. The trial court granted summary judgment for the employer, and the court of appeals affirmed. We reversed the

{¶ 9} Civ.R. 56(C) provides for the granting of summary judgment when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. In deciding whether there exists a genuine issue of fact, the evidence must be viewed in the nonmovant's favor. Civ.R. 56(C). Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1127.

{¶ 10} In the context of an intentional tort allegedly committed by an employer, we have previously held that to overcome a motion for summary judgment, an employee alleging an intentional tort must set forth specific facts to raise a genuine issue of fact that the employer committed an intentional tort. *Van Fossen*, 36 Ohio St.3d 100, 522 N.E.2d 489, at paragraph seven of the syllabus. Proof of the three elements of an employer intentional tort may be made by direct or circumstantial evidence. *Adams v. Aluchem, Inc.* (1992), 78 Ohio App.3d 261, 264, 604 N.E.2d 254, 256. With these principles in mind, we now must determine whether summary judgment was appropriate.

{¶ 11} In granting summary judgment, the trial court relied upon the deposition testimony of Killen Station rescue squad member Gary Nibert and former plant manager Fred Southworth. Both men testified that the Killen Station rescue squad was composed of volunteers and that the decision to perform a rescue

---

judgment and remanded the cause on the ground that reasonable minds could differ concerning whether an intentional tort had been committed by the employer.

was a voluntary one. Additionally, Nibert testified that members of the Killen Station squad were not expected to do anything they chose not to do. Based upon this evidence, the court held that the rescue by the decedent was purely voluntary and there was no showing of an intentional tort.

{¶ 12} DP & L likewise emphasizes that the evidence shows that the Killen Station rescue team is purely autonomous, in that it operates without management influence and interference. Since there was no evidence presented to show anything other than a voluntary rescue attempt made by the decedent, DP & L argues, summary judgment was proper. We disagree. Although the rescue team is autonomous in certain respects and membership on the squad is voluntary, we cannot say as a matter of law that the decision to make the rescue attempt in this case was strictly voluntary, without any direction by management. Even though there was evidence presented regarding the voluntary nature of the rescue attempt, we find that there was also evidence presented to the contrary.

{¶ 13} Since DP & L created the Killen Station rescue team, management at DP & L has been involved in many facets of the squad's operation. For instance, training of the rescue squad is paid for by DP & L and is considered to be part of the employee's job. Training is conducted on DP & L premises during work hours, and members continue to receive their pay during training sessions. Management also has the ultimate authority to approve or reject training sessions. Additionally, management personnel at DP & L also order and pay for all rescue squad equipment and DP & L owns and operates an ambulance, which the rescue squad uses. Furthermore, DP & L policy requires that all rescue squad drills be coordinated through the station manager and shift supervisor. Thus, this evidence refutes DP & L's assertion that the rescue team operates independently of management.

{¶ 14} We find that genuine issues of material fact exist under the third prong of *Fyffe*, which DP & L concedes is the focus of this appeal. Under the third prong of this test, the employer, with knowledge of a dangerous condition and of a

substantial certainty of harm, must have required the employee to perform a dangerous task. We find that appellant has presented sufficient evidence to generate a triable issue whether the employer had this knowledge yet required the decedent to perform the vertical rescue.

{¶ 15} There was evidence that the elevator inside the smokestack had malfunctioned previously, yet the rescue team had never been trained on how to respond to this type of emergency. There was further evidence that DP & L was aware that the rescue team had minimal training in vertical rescues. In fact, rescue team members received no training at platform levels inside the stack or at any level over one hundred feet. Nor had the squad ever attempted a vertical rescue before. In a letter to DP & L management dated two years before his accident, the decedent had, at one time, resigned from the rescue squad, protesting that the squad's training was inadequate. Even though DP & L had been advised that additional training was necessary, there is evidence that DP & L did not authorize any additional vertical training. Given these circumstances, we find that reasonable minds could conclude that DP & L was aware of a dangerous condition that created a substantial certainty of harm.

{¶ 16} Additionally, sufficient evidence was presented to create an issue of fact whether DP & L required the decedent to perform the rescue. DP & L contends that this requirement is not satisfied because DP & L never ordered the decedent to climb up the ladder to rescue the stranded men. However, under the third element of *Fyffe*, DP & L did not have to expressly order the decedent to make the rescue. Instead, to overcome a motion for summary judgment, an opposing party can satisfy this requirement by presenting evidence that raises an inference that the employer, through its actions and policies, required the decedent to engage in that dangerous task. Here, former plant manager Fred Southworth testified that DP & L expected the rescue squad to respond to an emergency, and to do so in a safe manner. Thus, when DP & L sounded the alarm and summoned its own rescue squad into action,

reasonable minds could differ as to whether DP & L required the squad to make the rescue.

{¶ 17} We are unwilling to conclude that, as a matter of law, the decedent, in attempting the rescue, did so purely as a volunteer. Obviously, DP & L formed the rescue squad primarily for its own benefit, to provide on-site personnel to respond to plant emergencies. DP & L paid for the squad's training and equipment, and arranged for members to train on company time. Under these circumstances, and based upon the evidence presented, we hold that questions of fact remain as to whether DP & L did act to require the decedent to make the rescue attempt in question. Since sufficient evidence was presented to overcome DP & L's motion for summary judgment, we find that the trial court erred in granting summary judgment for DP & L.

{¶ 18} Accordingly, the judgment of the court of appeals is reversed, and this cause is remanded to the trial court for further proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**MOYER, C.J., dissenting**.

{¶ 19} Because the trial court properly granted summary judgment to defendant-appellee Dayton Power & Light Company, I respectfully dissent from the decision of the majority. Appellant did not provide sufficient evidence, circumstantial or otherwise, to overcome a motion for summary judgment.

{¶ 20} In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46, this court stated that for summary judgment to be granted, it must appear "that there is no genuine issue as to any material fact; (2)

that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence strongly construed in his favor." *Id*. at 66, 8 O.O.3d at 74, 375 N.E.2d at 47. See, also, Civ. R. 56(C).

{¶ 21} An employee who wishes to recover against his employer for an intentional tort must demonstrate the following three elements: (1) knowledge by the employer of the existence of a dangerous process, procedure, or condition within the business operation; (2) knowledge by the employer that if the employee is subjected by his employment to the dangerous process, procedure, or condition, then harm to the employee will be a substantial certainty; and (3) the employer, under such circumstances and with such knowledge, acted to require the employee to continue to perform the dangerous task. *Van Fossen v. Babcock & Wilcox Co*. (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus; *Fyffe v. Jeno's, Inc*. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

{¶ 22} In order to overcome a motion for summary judgment, plaintiff-appellant Trisha E. Hannah must establish evidence to support all three prongs of the test. Evidence in support of one or two of the elements is not enough. Appellant has been unable to produce evidence in support of the third prong.

{¶ 23} No evidence has been presented in support of the proposition that Dayton Power & Light Company required Paul Hannah to attempt the vertical rescue of two men at Dayton Power & Light's Killen electric generating station. The deposition testimony of Killen rescue squad member Gary Nibert and former plant manager, Fred Southworth, indicates that the rescue squad was composed of volunteers and that any decision to perform a rescue was completely voluntary. This testimony is supported by the fact that Paul Hannah had earlier quit the rescue squad without any apparent criticism, negative evaluation, or other repercussions

to his career as an employee of Dayton Power & Light, and he later rejoined the squad without incident. Appellant argues that this evidence should not be accepted at face value, but must be presented to a jury for full examination. However, the sufficiency of the appellee's evidence is not at issue here. It is the sufficiency of the evidence produced by the appellant that must be established in order to survive a motion for summary judgment. Appellant has failed to produce any evidence in support of the proposition that Dayton Power & Light required Paul Hannah to make that rescue attempt.

{¶ 24} The only evidence cited by the majority in support of the contention that Dayton Power & Light required Hannah to act is the testimony of former Killen Station plant manager Fred Southworth, who testified that Dayton Power & Light expected the rescue squad to respond to an emergency, and to do so in a safe manner. However, Southworth's comments do little to support the assertion that Dayton Power & Light required Hannah to make a rescue attempt. It is not reasonable to infer that whenever one is expected to act, one is also required to act. Additionally, any inference from Southworth's testimony that there was a requirement to act directly contradicts Nibert's testimony that the rescue unit was purely a volunteer group.

{¶ 25} The majority also asserts that Dayton Power & Light's formation of the rescue squad, its funding of the squad's training and equipment needs, and its arrangements for the squad to train on company time create a question of fact as to the voluntariness of Hannah's decision to attempt the rescue. That Dayton Power & Light played a major role in the training and supplying of the rescue team is not related in any way to Hannah's personal decision on whether or not to attempt the rescue. The degree of Dayton Power & Light's involvement in the administration of the rescue team did not preclude Gary Nibert, another member of the rescue team who was present at the accident, from refusing to attempt the rescue, nor did it compel Hannah to take the action he took. The level of Dayton Power & Light's

involvement does nothing to support any inference that Paul Hannah was compelled to act by his employer.

**{¶ 26}** There can be no doubt that Paul Hannah's attempted rescue of two men at the Killen station was a heroic deed. It was heroic not because Hannah was coerced into acting by his employer, but because Hannah chose to act out of his own free will. Appellant is unable to produce any evidence to support any reasonable inference that Hannah was required by Dayton Power & Light to perform the rescue. Because no evidence of prong three of the *Fyffe* test has been presented, appellant cannot recover against Dayton Power & Light for an intentional tort.

**{¶ 27}** For the foregoing reasons, I would affirm the decision of the court of appeals, and uphold the granting of appellee's motion for summary judgment.

COOK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

———————————