OPINION
Plaintiff-appellant, Douglas A. Wilkinson, appeals the decision of the Butler County Court of Common Pleas granting summary judgment on behalf of defendants-appellees, Cincinnati Insurance Companies/Cincinnati Financial Corporation, Jim Ogle, Andrew Sloan, Mike Albert Leasing Rental, and Robert Harbin.[1]
On June 6, 1998, Wilkinson was involved in an automobile accident caused by Harbin, an employee/driver for Mike Albert Leasing. CIC is Mike Albert Leasing's insurance carrier. As a result of the accident, Wilkinson suffered substantial injuries. His total medical bills are more than $45,000. Wilkinson claims that he has been unable to work since the accident and that he has suffered severe economic consequences from his inability to work. Prior to the accident, Wilkinson earned approximately $85,000 per year as a self-employed design contractor.
Sloan, a claims representative for CIC, was directed to investigate and attempt to settle Wilkinson's bodily injury and property damage claims. After conducting some investigation, Sloan entered into informal settlement negotiations with Wilkinson as Wilkinson's medical bills were submitted. Over the course of the following months, Wilkinson's bills and expenses continued to mount, and CIC advanced a total of $37,500 to Wilkinson through Sloan. During this time, Wilkinson continued to provide various medical and financial records when requested by Sloan. Wilkinson claimed that, as a result of his financial situation, his medical bills became past due and he fell behind in child support, mortgage, and utility payments.
In December 1998, Wilkinson asked Sloan for a $12,000 advance so that he could buy his children Christmas presents. Sloan told Wilkinson that his superiors would not advance money at that time, but they would meet after the holidays to review appellant's records. On February 1, 1999, Sloan and Wilkinson met to review the records. Later that day, Sloan called Wilkinson to inform him that there would be no more advances, but they could settle the claims for $200,000.
Wilkinson sought to file in the trial court an "emergency motion" to compel CIC to advance funds, but the clerk of courts refused to accept the motion as no complaint had been filed in the case. On February 4, 1999, Wilkinson contacted Sloan and agreed to the settlement offer. A release of all claims was executed by the parties, and Wilkinson received a check for $200,000, which he deposited in his bank account. In total, Wilkinson received the $200,000 settlement, $37,500 in advances, and over $5,000 for property damage and related expenses.
On February 9, 1999, Wilkinson filed a pro se complaint against appellees in the trial court, alleging negligence and intentional infliction of emotional stress and seeking recovery of his medical expenses. On April 6, 1999, Wilkinson mailed CIC a letter stating that he wanted to cancel the release and settlement and return the money. On May 12, 1999, Wilkinson, through newly retained counsel, filed an amended complaint seeking to void the settlement release and seeking further damages. Appellees timely answered.
On May 27, 1999, appellees filed a motion for summary judgment contending that Wilkinson's claims had been settled and that the release was enforceable. Wilkinson timely filed a memorandum in opposition to summary judgment, arguing that he had signed the settlement release under economic duress, thus invalidating the release. On September 30, 1999, the trial court filed a judgment entry granting summary judgment on behalf of appellees. The trial court found that although Wilkinson's economic situation was problematic, appellees did nothing to coerce Wilkinson into entering into the settlement and release. Wilkinson appeals, raising a single assignment of error:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEES.
 In his sole assignment of error, Wilkinson contends that there were genuine issues of material fact regarding appellees' conduct as to his claim of economic duress. He claims that he was forced into entering into the settlement and release. Wilkinson does not challenge the validity of the settlement and release other than to assert economic coercion.
Pursuant to Civ.R. 56(C), the trial court may grant summary judgment where there is no genuine issue as to any material fact.Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346. Summary judgment will be granted if reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made. Id. An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions or interrogatories are in conflict. Linkv. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. A dispute of fact is "material" if it affects the outcome of the litigation, and is "genuine" if demonstrated by substantial evidence going beyond the allegations of the complaint. Burkes v. Stidham
(1995), 107 Ohio App.3d 363, 371.
In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485. Further, "the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Id., citing Turner v. Turner
(1993), 67 Ohio St.3d 337, 341. In reviewing the moving party's motion, a trial court should award summary judgment with caution.Welco Industries, 67 Ohio St.3d at 346. Nevertheless, a summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essential elements of his claim. Id.
In determining whether the plaintiff demonstrated the elements of his claim, an appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision when making its own decision.Beardsley v. Manfredi Motor Transit Co. (1994), 97 Ohio App.3d 768,769.
The law of duress as a reason to avoid a contract not only includes physical compulsion, but it also includes "economic duress." Blodgett v. Blodgett (1990), 49 Ohio St.3d 243, 245-246. A person claiming to have been a victim of economic duress may show that he "was subjected to ` a wrongful or unlawful act or threat, ' and that it ` deprive[d] [him] of his unfettered will." Id., quoting 13 Williston on Contracts (3 Ed. 1970) 704, Section 1617. Additionally,
 [m]erely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.
 Blodgett, 49 Ohio St.3d at 246. It is not enough to show that one assented to the contract "merely because of difficult circumstances that are not the fault of the other party." Id. at syllabus.
Three elements are necessary to establish economic duress. These elements are
 (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. * * * The assertion of duress must be proven to have been the result of the defendant's conduct and not by the plaintiff's necessities. (Emphasis in original.)
 Id. at 246, quoting Urban Plumbing Heating Co. v. United States (U.S.Ct. of Claims 1969), 408 F.2d 382, 389-390, 187 Ct.Cl. 15, certiorari denied (1970), 398 U.S. 958, 90 S.Ct. 2164. In reviewing whether coercion has been proven, it must be remembered the courts have rejected the proposition that when one executes a settlement or satisfaction merely because one cannot afford to wait for the outcome of the dispute, the settlement or satisfaction may be subsequently avoided:
 Almost every settlement agreement contains some modicum of coercion or duress. An appeal or prospect of a trial always involves a degree of risk to both parties. The law encourages settlement of disputes.
 Id. at 246-247.
In the instant case, Wilkinson accepted the settlement offer from CIC when he discovered that he could not compel the company to pay further advances. At that point, Wilkinson had received from the company $37,500 in less than six months. As demonstrated by Wilkinson himself, appellees did not prevent him from seeking advice of counsel or pursuing legal action. This fact must be coupled with the trial court's observation of Wilkinson's actual finances:
 [T]he evidence submitted indicates that the plaintiff attempted to return the $237,500 two months after he received the money from CIC. (Plaintiff exhibit A). The evidence submitted by plaintiff also indicates that he had "put a hell of a lot of my income aside for my kids and my futures. [sic] Where and how I did this is not of anyones [sic] concern but mine, but I did it and since the accident have had to dip into some of this money just to survive". (Plaintiff exhibit 2). The inference that could be drawn is that the plaintiff is not as destitute as he would have the court believe.
 Viewing the evidence most favorable to Wilkinson we cannot disagree with the trial court's finding that economic duress was not proven. We are sympathetic to Wilkinson's plight, but he produced no evidence that appellees prevented him from seeking legal counsel or from pursuing legal action. Although Sloan suggested trying to settle the dispute without counsel, Wilkinson was free to seek legal advice at any time. Wilkinson's financial condition was not due to any action by appellees in settling the dispute. Rather, his financial constraints were caused by his increasing medical bills and his inability to work after the accident. By Wilkinson's own admission, he agreed to settle the case so as to have more money at his disposal and to pay his expenses.
Although there is little evidence in the record in general, it is clear that Wilkinson had alternatives other than accepting the settlement. He could have sought legal advice and instituted legal action, a course he chose only days after accepting CIC's settlement offer. As noted by the trial court in the above-quoted observation, Wilkinson can apparently afford to return the entire $237,500, even though he originally claimed to have been in dire need of the money. In light of the above facts, the trial court correctly concluded that only one conclusion could be drawn from the evidence in the record, namely, that appellees did not economically coerce Wilkinson into accepting the settlement and signing the release of all claims.
The trial court did not disbelieve that Wilkinson's finances contributed to his decision to accept the proposed settlement, or that appellees were able to use Wilkinson's situation to their advantage. But there was no evidence that appellees directly or indirectly coerced Wilkinson's acceptance of the settlement and release. The trial court did not err by granting summary judgment in favor of appellees. Wilkinson's assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] When referred to individually, individuals will be referred to by their last names. Cincinnati Insurance Companies/Cincinnati Financial Corporation will be referred to as "CIC." Mike Albert Leasing Rental will be referred to as "Mike Albert Leasing." When referred to collectively, defendants-appellees will be referred to as "appellees."