OPINION
Plaintiff-Appellant, Susan R. Gibson, individually and as administratrix of the Estate of Mike E. Gibson, and also as parent, natural guardian and next friend of Kayla and Samantha Gibson, appeals the judgment of the Paulding County Common Pleas Court directing a verdict in favor of Defendant-Appellee, Drainage Products, Inc.
This case arises from an incident that occurred on February 21, 1996, which led to the death of Mike E. Gibson. The defendant is a company that manufactures plastic corrugated drainage pipe, and employed Mike Gibson on a full-time basis from March 1994 until his death.
As part of defendant's manufacturing process, plastic chips are fed by a conveyor into an "extruder" that heats the plastic until it becomes malleable, at approximately 500 degrees Fahrenheit. The plastic is then pushed through a "screen changer" that removes impurities, and then through two pipes that force the molten plastic into a die that molds it into a tube shape. At certain intervals the piping is wrapped with heating coils, which are intended to keep the plastic at a consistent temperature as it passes through the machine. The manufacturing line is approximately sixty feet long.
In 1994, the Occupational Health and Safety Administration (OSHA) issued a citation to the defendant, relating to the defendant's failure to implement a safety procedure known as a "lockout-tagout" for the plastic tubing manufacturing line. Specifically, this procedure required that when maintenance or repair work was to be performed on the manufacturing line, the person who was performing the work was to shut down the power to the line and place a lock on the power switch to prevent the line from being restarted. The relevant OSHA rules indicated that there should be a written "lockout-tagout" policy and training about that policy to ensure that "before any employee performs any servicing or maintenance on a machine or equipment * * * the machine shall be isolated from the energy source, and rendered inoperative."29 C.F.R. § 1910.147(a)(3)(c)(1).
In response to the 1994 OSHA citation, the defendant developed a written "lockout-tagout" policy, but apparently trained only certain supervisory personnel as to its specifics. Other personnel who had not been trained in "lockout-tagout" occasionally performed "minor maintenance" upon the manufacturing line.
On February 21, 1996, defendant's employee, Tim Jewell, who was working as an "operator" of a portion of the manufacturing line, noticed that molten plastic appeared to be seeping from around the screen changer. He concluded that the bolts joining the pipe in the rear of the screen changer to the pipe in front of it were loose, but a few of the bolts snapped as he was attempting to tighten them. At this point, Jewell contacted the floor foreman, John Meggit, who decided that the proper course of action was to remove and replace all the bolts holding the two pipes and the screen changer together.
Meggitt and Jewell spent twenty-five minutes to an hour removing the broken bolts that held the two pipes and the screen changer together, at which point Meggitt left the work area to find replacement bolts. Before Meggitt left, he instructed Jewell to separate the screen changer from the pipe leading into the die and to scrape the plastic residue from the edges of the changer. The extruder was shut down, and the heaters surrounding the piping closest to the extruder were also shut off. However, the heaters leading into the die were apparently left on. Jewell then disconnected the screen changer from the pipe leading to the die, and began to clean the plastic off, at which point plaintiff's decedent approached Jewell and asked him if he wanted help. Jewell indicated that he did not need Gibson's help.
Mike Gibson, was a "mixer" and did not work directly on the line; he worked in a different but nearby area of the plant. However, testimony in the record indicated that it was not uncommon and in fact might have been expected for employees who had completed their assigned tasks to assist other employees. Moreover, employees were both expected and required to talk to a supervisor if they ran out of work to do. Gibson's supervisor was John Meggitt, the employee who had been working on the pipeline and had left the area to obtain new bolts prior to the time that Gibson approached.
At approximately the same time as Gibson approached Jewell, maintenance supervisor Randy Bullinger also approached the scene. Shortly thereafter, Bullinger heard a hissing sound, and shouted "duck" or other words to that effect. Tim Jewell testified that he heard a "pop" and a hiss, and knew at that point that molten plastic was about to blow out of one of the open tubes. In fact, plastic did blow out of the pipe connected to the die. Plaintiff's decedent was standing approximately three feet away from the open end of the pipe, and was sprayed directly in the face with molten plastic. He was immediately transported by EMS to the Van Wert County Hospital and subsequently to Parkview Memorial Hospital in Fort Wayne, Indiana. While at the Indiana hospital, Gibson suffered an asthma attack that was allegedly treated in a negligent manner, and he died three days after the initial injury.
On January 21, 1997, plaintiff filed this action in the Common Pleas Court of Paulding County, alleging that Haviland Drainage Products, Inc. had committed an intentional tort against Mike Gibson that resulted in his death. Plaintiff also alleged medical malpractice against the Indiana Hospital and the two Indiana doctors who had treated Mr. Gibson. However, the claims against the Indiana defendants were dismissed prior to trial due to lack of personal jurisdiction, and plaintiff filed an amended complaint proceeding solely against defendant Drainage Products, Inc. While defendant, Drainage Products, Inc. and Haviland Products, Inc. are separate but related companies, Mike Gibson was employed by Drainage Products, Inc., and plaintiff's amended complaint reflected this fact.
Defendant answered the complaint, discovery commenced, and on October 15, 1997, defendant filed a motion for summary judgment, arguing in part that plaintiff had failed to present sufficient evidence of the defendant's intentional conduct pursuant to the test set forth in Fyffev. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraphs one and two of the syllabus. Plaintiff responded by arguing that it was standard procedure at the plant to work on portions of the line without "powering down" the entire line and that this procedure created an unreasonable danger of spraying hot plastic. Plaintiff also noted that the procedure appeared to be in violation of both the company's own written policy and the OSHA regulations on the "lockout-tagout", and that if the policy regulations had been complied with, Mike Gibson's injuries and his eventual death would not have occurred. On April 27, 1998, the trial court issued a judgment entry overruling the defendant's motion without setting forth any specific reasons for the decision.
The case proceeded to trial on October 25, 1999. At the close of Plaintiff's case, the defendant moved for a directed verdict pursuant to Civ.R. 50, again arguing that the plaintiff failed to present sufficient evidence of an intentional tort by the employer under the standard set forth in Fyffe. Although it had previously denied summary judgment on this same ground, the trial court determined that a directed verdict should be granted. This timely appeal followed wherein the plaintiff asserts three assignments of error for our review.
 Assignment of Error I The trial court erred in directing a verdict for defendant at the close of plaintiff's case as plaintiffs did prove a prima facie case of an employer intentional tort.
Plaintiff's first assignment of error asserts that the trial court improperly granted a directed verdict because her prima facie case contained evidence sufficient to establish that defendant acted intentionally under the test defined by the Ohio Supreme Court in Fyffev. Jeno's, Inc. (1991), 59 Ohio St.3d 115 :
 [I]n order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Fyffe, 59 Ohio St.3d 115, at paragraph one of the syllabus. The trial court granted a directed verdict based upon its conclusion that the plaintiff "failed to establish that prior to plaintiff's decedent's injury, the defendant knew of the existence of a dangerous process, procedure, equipment, or condition within its facility that was substantially certain to cause harm to plaintiff's decedent or any other employee."
Civ.R. 50(A)(4) provides the standard for a decision on a motion for directed verdict as follows:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
When addressing a motion for directed verdict, the trial court must neither consider the weight of the evidence nor the credibility of the witnesses. "A motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." O'Day v. Webb (1972),29 Ohio St.2d 215, paragraph three of the syllabus. "The `reasonable minds' test of Civ.R.50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of [the non-moving party]." Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, 68-69. Moreover, since a directed verdict presents a question of law, appellate courts are to review a trial court's judgment on a de novo basis. See, e.g., Nichols v. Hanzel (1996),110 Ohio App.3d 591, 599.
Because we find it to be dispositive, we have chosen to focus our attention on the third prong of the Fyffe test. As previously noted, pursuant to the final element of the Fyffe test, the employee must demonstrate "that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe, 59 Ohio St.3d 115, at paragraph three of the syllabus. We recognize that an express order from the employer is not the only method by which an opposing party can satisfy the third prong of the Fyffe test. Hannah v. Dayton Power Light (1998), 82 Ohio St.3d 482,487. Rather, this element can be satisfied "by presenting evidence that raises an inference that the employer, through its actions and policies, required the decedent to engage in that dangerous task." Id.
It is undisputed that Mike Gibson was never expressly directed to assist in the repair of the extruder pipe. And, based upon the evidence presented in this case, we find that Appellant has failed to raise even the inference of such a requirement.
First, there is no evidence from which the jury could have inferred that the defendant required plaintiff's decedent to be in the area to offer assistance with the problem. Even though various witnesses testified that employees were expected to assist each other in performing various tasks, the evidence shows that upon Gibson's approach, Jewell stated that he had the situation under control and did not need any help. Notwithstanding, the record indicates that Gibson remained standing in the area, apparently merely observing the repairs, for approximately two to five minutes before the accident occurred.
Similarly, although the evidence also suggests that Gibson would have been required to ask his immediate supervisor for another assignment in the event that he ran out of work at his own station, it is undisputed that John Meggitt, Gibson's supervisor, was not working on the line nor was he in the immediate area at the time of plaintiff's decedent's approach. There is no evidence that Gibson even asked for Meggitt or that he was waiting for Meggitt to return during those few moments that he remained in the area after Tim Jewell informed him that the situation was under control. Consequently, there is no evidence from which the jury could have inferred that Gibson was in the area in an attempt to find his supervisor to ask for more work.
Additionally, we note that this Court has previously found that in order to satisfy the third prong of the Fyffe test, the injured employee must have been compelled, as a condition of employment, to participate in the dangerous task. See, e.g. Myers v. Oberlin Processing, Inc. (Sept. 27, 1996), Seneca App. No. 13-96-20, unreported, appeal not allowed by77 Ohio St.3d 1547; Paxton v. Hench (July 22, 1992), Allen App. No. 1-92-36, unreported, jurisdictional motion overruled by 66 Ohio St.3d 1410. In this case, Plaintiff has merely shown that the decedent's employer expected him to inquire about and perform any number of unspecified and varied duties at times when his own tasks had been completed. This general expectation is not tantamount to a requirement that Mike Gibson specifically assist in the repair of a manufacturing line without the power to the entire line having been first shut down. While we certainly are not unaware of the tragic results of this accident, we find that reasonable minds could only conclude that Plaintiff's decedent placed himself at the point of danger by choice and not as a requirement of employment.
Based upon the foregoing, we find the trial court's decision to grant the defendant's motion for directed verdict, albeit for different reasons than those addressed herein, was appropriate. Consequently, Plaintiff's first assignment of error is not well-taken and is overruled.
 Assignment of Error II The trial court erred in ruling it was admitting evidence of the surviving spouse cohabitating with another after decedent's death.
 Assignment of Error III The trial court erred in permitting defense counsel to adduce and argue that since OSHA cited the violations as serious, not willful, no employer intentional tort claim existed.
Given our disposition of the first assignment of error, specifically on the third prong of the Fyffe test, we find these remaining evidentiary arguments to have been rendered moot.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
Judgment affirmed.
 HADLEY, J., concurs.
SHAW, J., dissenting.