OPINION
{¶ 1} Plaintiffs-appellants, Clare and Dennis Layer, appeal the decision of the Warren County Court of Common Pleas granting summary judgment to defendants-appellees, Paramount Parks, Inc. ("Paramount"), owner and operator of Kings Island Amusement Park ("Kings Island"), in a case arising from a fall on appellees' premises. We affirm the trial court's decision.
 {¶ 2} On August 11, 1996, Clare, along with her two daughters and other relatives, visited Kings Island where they first rode the Flying Eagle. The ride has free-hanging cars that are suspended on cables attached to overhead arms jutting from a common center. When the ride is not turning, the cars, which are each equipped with a seat belt, rest suspended approximately 20 inches from the ground. During a ride, the center pole rotates causing the suspended cars to rotate around the center. Centrifugal force then pushes the cars up further into the air and away from the center pole. Because the cars are suspended, they swing when entering and exiting them, and can continue to sway back and forth up to two feet in either direction for a period of time after the ride has come to an end. A sign affixed on the outside of each car warns customers: "CAUTION CAR WILL SWING WHEN ENTERING AND EXITING."
 {¶ 3} Clare had ridden the Flying Eagle approximately 50 times in the past. As a result, she knew that cars would swing when entering and exiting them and that they would not immediately become stationary once the ride was over. On those prior occasions, she had exited the car at times by herself, at times with the help of a relative, and at times with the help of a Kings Island employee. On those latter occasions, she would get the employee's attention by waving or yelling. At other times, an employee would automatically come to help her exit the car.
 {¶ 4} On that particular day in 1996, Clare rode the Flying Eagle with her daughter Cassandra. When the ride was over and came to a stop, Cassandra jumped out and walked away leaving her mother behind. At that point, the car was swinging a lot, about six inches each way. Clare called to her daughter for help but Cassandra apparently did not hear her. Because the car was still swinging, Clare did not feel it was safe for her to get out at that time and tried to get the attention of an employee. At the time, there were two employees helping with the ride, a small female employee standing at the entrance gate ten to 15 feet away from Clare, and a male employee standing at the exit gate 20 to 30 feet away from Clare.
 {¶ 5} Clare looked at the female employee to see if she would come and help her exit the car. However, according to Clare, the employee ignored her. Clare testified that she never yelled or waved to the female employee for help because she did not think, based on the employee's small figure, that she could help her. Clare admitted, however, that it does not take much to hold a car to keep it from moving. Clare then tried to get the attention of the male employee, who was standing at the exit gate talking to girls 20 to 30 feet away from Clare, by waving to him three times. According to Clare, he too ignored her. Wanting to get out, Clare decided to exit the car. The car was still swinging. Three to four minutes had elapsed since Cassandra had left the car.
 {¶ 6} Clare put her right foot on the ground. As she was pulling her left foot from the car to put it on the ground, she realized that the seat belt was wrapped on that foot. As a result of pulling her left foot, Clare jerked the car which started swaying. Hopping on one foot, Clare eventually freed her left foot from the belt. As she was putting that foot on the ground, the car came back and hit her. Clare lost her balance and fell on her left ankle, severely injuring it. Clare could not remember if she had grabbed onto the car to keep herself from falling.
 {¶ 7} In September 2001, appellants filed a complaint against appellees alleging negligence and loss of consortium. By judgment entry filed September 11, 2002, the trial court granted summary judgment to appellees. The trial court found that "any danger or risk associated with climbing out of the car was open and obvious and that therefore [appellees] had no duty to warn [Clare] about it." The trial court also found that appellees "assigned ride attendants who were available to assist patrons in climbing into and out of the ride cars. [Clare] signaled to one of the ride attendants before she began to climb out. However, she apparently grew impatient and decided to climb out of the ride car unassisted. This is not negligence on the part of [appellees]." This appeal follows.
 {¶ 8} In their sole assignment of error, appellants argue that the trial court erred by granting summary judgment to Paramount and Kings Island. Appellants first contend that the trial court improperly considered Clare's credibility when it found that Clare "apparently grew impatient and decided to climb out of the ride car unassisted." Next, appellants contend that Kings Island breached its duty to render assistance to Clare while she was exiting the car. Finally, appellants contend that Paramount's and Kings Island's negligence proximately caused Clare's injury.
 {¶ 9} Pursuant to Civ.R. 56(C), a court may grant summary judgment where there is no genuine issue as to any material fact. Summary judgment is appropriate where reasonable minds can come to only one conclusion, which is adverse to the party against whom the motion is made. WelcoIndustries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions, or interrogatories are in conflict. Link v.Leadworks Corp. (1992), 70 Ohio App.3d 735, 741.
 {¶ 10} In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor.Hannah v. Dayton Power Light Co., 82 Ohio St.3d 482, 485, 1998-Ohio-408. As well, "the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Id. An appellate court must conduct a de novo review of the record to determine if summary judgment was appropriate. Jones v. Shelly Co.
(1995), 106 Ohio App.3d 440, 444.
 {¶ 11} To avoid summary judgment in a negligence action, the plaintiff must show: (1) the defendant owed her a duty of due care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75,77.
 {¶ 12} It is undisputed that Clare was a business invitee for all purposes pertinent to this appeal. An owner or occupier of premises owes a business invitee a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. Paschal v. Rite Aid Pharmacy, Inc.
(1985), 18 Ohio St.3d 203. An owner is not, however, an insurer of the customer's safety. Id. Further, an owner is under no duty to protect a business invitee from dangers known to the invitee or dangers that are so obvious and apparent to the invitee that he should reasonably be expected to discover them and protect himself from them. Id. at 203-204; see, also, Raflo v. Losantiville Country Club (1973), 34 Ohio St.2d 1, 4. This rule applies equally to owners and operators of amusement parks. Jacksonv. Kings Island (1979), 58 Ohio St.2d 357, 359.
 {¶ 13} Appellants first contend that the trial court improperly considered Clare's credibility when it found that Clare "apparently grew impatient and decided to climb out of the ride car unassisted."
 {¶ 14} "Credibility issues typically arise in summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved. Since resolution of the factual dispute will depend, at least in part, upon the credibility of the parties or their witnesses, summary judgment in such a case is inappropriate. * * * [C]redibility questions also arise when an unambiguous statement contained in the affidavit of the party moving for summary judgment is controverted by that party's earlier deposition testimony. Such a discrepancy over a material fact can be resolved only by the trier of fact[.]" Turner v. Turner, 67 Ohio St.3d 337, 341,1993-Ohio-176.
 {¶ 15} During her deposition, Clare testified that as she was waiting for help, the male employee was letting people out of the ride area while the female employee was standing at the entrance gate. Clare testified that the female employee was not admitting new patrons into the ride area. By the time Clare decided to exit the car, three to four minutes had elapsed since Cassandra had left the car. Asked why she did not simply sit in the car until someone came to her aid, Clare replied "I just didn't. I wanted to get out." There is no evidence in the record that Clare could not stay in the car longer and wait for help. Stephanie White, who in 1996 supervised two or three rides including the Flying Eagle, testified that employees would get to patrons as soon as they could but that some patrons would exit before they could get to them. White also testified that the unloading could take seconds or minutes.
 {¶ 16} Clare's testimony that she did not want to stay in the car any longer but rather wanted to get out was not contradicted by statements provided by Paramount or Kings Island; nor was it in conflict with other testimony from Clare. In light of Turner, we find that the trial court did not err in finding that Clare "apparently grew impatient and decided to climb out of the ride car unassisted."
 {¶ 17} Next, appellants contend that Kings Island breached its duty to render assistance to Clare while she was exiting the car.
 {¶ 18} Clare testified that she had ridden the Flying Eagle 50 times before August 1996. On those prior occasions, she had exited the car at times by herself, and at times with the help of a Kings Island employee. She would get the employee's attention by waiving or yelling. At other times, an employee would automatically come to help her exit the car. On that particular day in 1996, Clare stayed in the car after the ride was over because she did not feel it was safe for her to get out while the car was still swinging. She tried to get the attention of the female employee standing ten to 15 feet away from her by simply looking at her, but the employee ignored her. Clare never yelled or waved to the female employee for help. Clare then tried to get the attention of the male employee by waiving to him three times. By her own testimony, this employee was standing 20 to 30 feet away from Clare and was busy talking to girls and letting patrons out of the ride area. He too ignored her. Wanting to get out and having done so by herself several times in the past, Clare decided to exit the car. The car was still swinging. The employees were not admitting new patrons into the ride area. As previously noted, there was no evidence that Clare could not stay in the car longer and wait for someone to come help her.
 {¶ 19} Employees working at the Flying Eagle were given a training manual. With regard to the unloading of patrons, the manual directs the employees to "[c]aution guests to remain seated until the ride is stopped. Once planes are nearly stopped, press the Exit * * * button and assist the guests in steadying any planes that are swaying excessively. Direct guests to the exit. Close the Exit Gate as soon as the last guest has left."
 {¶ 20} In August 1996, Tonja Schoelwer was the manager of the Old Coney area which included the Flying Eagle. Schoelwer testified that while cars can swing quite a lot after a ride, patrons are not supposed to be disembarking at that time. Rather, they are to wait until the car comes to a complete stop or wait until one of the employees can come and stop their car. Schoelwer testified that employees are trained to look for and assist patrons having trouble getting in and out of the cars and that if asked, they must provide assistance. However, patrons may have to wait if the employees are occupied with another car. Schoelwer noted that most adult patrons are not assisted unless they ask for assistance or an employee notices them struggling.
 {¶ 21} Both Schoelwer and White testified that there was a system of unloading patrons whereby the two employees assigned to the ride would work clockwise or counterclockwise around the ride and stop each car. If at that point a patron needed assistance to disembark, the employee would hold the car while the patron exited. White testified that although the goal was to assist each patron exit the cars, sometimes patrons, including patrons who had asked for assistance, would exit before they could get to them. If a patron needed help, however, employees would get to them as soon as they could. White also testified that once the patrons had exited the cars, the employees would stand at the exit, check the whole ride area, and make sure that the exit gate was shut and locked.
 {¶ 22} Although White was working on the Flying Eagle on August 11, 1996, she did not witness Clare's fall and did not know why Clare had fallen. White testified that she did not recall if Clare's car had been stabilized. She also did not recall Clare gesturing or calling out to her for help before she exited the car. White testified that when she first observed Clare, she (White) was in the ride area stopping cars.
 {¶ 23} While White and Schoelwer's testimony clearly show Paramount and Kings Island had a duty to assist patrons, we find that there was no breach of such duty. By her own testimony, Clare had exited that ride in the past on her own without any help from employees. That particular day, wanting assistance, Clare tried to get help from the female employee by merely looking at her. Clare never gestured or called out to her. Clare then tried to get help by waiving three times to the male employee who was busy letting patrons out and talking to people. White testified that she did not see Clare. The male employee never testified. Because Clare was the only patron left on the ride, employees were bound to discover her presence before letting new patrons enter the ride area. Indeed, employees were to check the whole ride area before letting in new patrons. There was no evidence that Clare could not stay longer in the car, or that, had she either waited longer or vocally asked for assistance, she would not have been helped by the employees. Yet, wanting to get out, Clare decided to exit the car without help. In light of the foregoing, we find that the evidence fails to demonstrate that Paramount and Kings Island breached their duty to assist Clare.
 {¶ 24} Finally, appellants contend that Paramount's and Kings Island's negligence proximately caused Clare's injury. Appellants assert that even if Clare's act of catching her foot in the seat belt, missing an opportunity to stabilize herself, or choosing to exit the car constituted comparative negligence, Clare's negligence no longer outweighs Paramount's and Kings Island's negligence. Indeed, according to appellants, following the Ohio Supreme Court's decision in Texler v. D.O.Summers Cleaners and Shirt Laundry Co., 81 Ohio St.3d 677,1998-Ohio-602, "the `open and obvious' doctrine is near death and no longer presents a bar to recovery." We disagree.
 {¶ 25} As we noted in Yahle v. Historic Slumber Ltd., Clinton App. No. CA2001-04-015, 2001-Ohio-8667, Texler was a case involving a plaintiff's contributory negligence, not a case involving a landowner's duty of care. Indeed, the supreme court never addressed the issue of the defendant's duty or breach of that duty because these elements had already been conclusively determined at trial. We held that "[t]he question of comparative negligence is never reached if a court determines that a landowner has no duty. * * * It is important for courts to distinguish between a defendant's duty of care and a plaintiff's contributory negligence because issues of comparative negligence are for the trier of fact unless the evidence is so compelling that reasonable minds can only come to one conclusion. * * * On the other hand, the existence of a duty in a negligence action is a question of law for the court to determine." Yahle, Clinton App. No. CA2001-04-015, at 7-8.
 {¶ 26} In light of our previous holding that Paramount and Kings Island did not breach their duty to assist Clare, we need not reach the question of comparative negligence. We therefore find that the trial court did not err by granting summary judgment in favor of Paramount and Kings Island. Appellants' sole assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.