OPINION
Robert Harbin is appealing the judgment of the Clark County Common Pleas Court, which entered a judgment notwithstanding the verdict (hereinafter "JNOV") that removed a jury award of over a million dollars for Mr. Harbin and instead found for Ohi-Tec Manufacturing, Inc. (hereinafter "Ohi-Tec").
Mr. Harbin started working for Ohi-Tec in July or August of 1994, through an assignment from a temporary personnel service. After completing a 90 day probationary period, Ohi-Tec hired Mr. Harbin as a full time employee. Mr. Harbin began working on a 150-ton mechanical press during the last 30 days of his probationary period. Mr. Harbin's supervisor, Tom Green, spent five minutes training Mr. Harbin on the mechanical press. As a part of his training, Mr. Harbin was taught that occasionally excess pieces of metal, referred to as "slugs", would get trapped in the press and would prevent the press from stamping out correct parts. Mr. Harbin was instructed to watch the finished parts and if they were misshapen, hit the "top stop" button on the press, wait for the press to stop, and then reach into the press with either his hand or a screwdriver and remove the slug. The press was operable in two modes: manual activation of a single cycle by pressing dual palm buttons and automatic mode in which the press cycled continuously until manually stopped. In 1994, the press was operating in automatic mode 75 to 90 percent of the time, where it cycled approximately 50 times per minute, despite being designed to operate at 35 strokes per minute. Mr. Harbin asserts that he had experienced malfunctions on the press, in which the press would continue to cycle after the "top stop" button was pressed. Additionally, Mr. Harbin testified that a lubrication mixture of oil and water which was designed to spray onto the die area of the press, was instead leaking out the front portion of the press and into the press control area. Mr. Harbin alleges that he informed his supervisor, Mr. Green, of both of these malfunctions on the press, but admits that he did not inform anyone else.
Edward Anderson, Ohi-Tec's plant manager in 1994, testified that the dual palm buttons were a safety guard on the press but that when the press was operating in automatic mode, the dual palm buttons were essentially removed and failed to provide a safety guard. Further, Mr. Anderson and Gary Robinson, Mr. Harbin's expert safety engineer, testified that Ohi-Tec knew that workers being exposed to the unguarded opening of the die press was a hazard that needed to be guarded. In a previous deposition, Mr. Anderson stated that the company did not want employees inserting their hands into the die space of the presses because if this occurred often enough an injury was substantially certain to occur. Further Mr. Anderson acknowledged that if a hand was in the die spaces of the press and the machine cycles, for any reason, that fingers on the hand will be lost.
On November 17, 1994, Mr. Harbin was operating the press in the course of his employment when he noticed the finished parts were misshapen due to a slug stuck in the machine. Mr. Harbin testified that he hit the "top stop" button, waited for the ram on the press to cycle to the top and then reached into the die spaces to remove the slug with his left hand. Subsequently, the press cycled and descended on Mr. Harbin's left hand. Mr. Harbin's left little finger and ring finger were amputated and his left middle finger was crushed. The doctors were able to save the middle finger but it has essentially lost its functionality.
Mr. Harbin was never warned of the danger of the press nor did he ever receive any handbooks on the press outlining its function and dangers. Additionally, Ohi-Tec did not train Mr. Harbin on using lockout/tagout safety procedures or a die block, even though these safety procedures had been implemented in the industry for some time.
Mr. Harbin filed this employer intentional tort action against Ohi-Tec and presented the above evidence to a jury. Ohi-Tec moved for a directed verdict both at the close of Mr. Harbin's case and at the close of its case and both motions were overruled. The jury returned a verdict in Mr. Harbin's favor in the amount of: $1,050,000, consisting of $750,000 in compensatory damages and $300,000 in punitive damages. Additionally, the jury awarded attorney fees. On June 8, 2001, the trial court entered a judgment entry upon the jury verdict and recognized that attorney fees were to be awarded in an amount to be determined at a later date. Later, the trial court recognized the claimed amount of attorney fees as $420,000. However, the trial court subsequently vacated the judgment entry on June 14, 2001, when Ohi-Tec filed its motion for JNOV. On August 20, 2001, the trial court issued a judgment entry sustaining Ohi-Tec's motion for JNOV. Additionally, the trial court stated in its opinion that if this Court reverses the judgment of the trial court on the JNOV, the trial court provisionally granted Ohi-Tec's motion for a new trial. Mr. Harbin has filed this timely appeal.
Mr. Harbin raises the following assignments of error:
 "1. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN IT APPLIED AN IMPROPER STANDARD BY WEIGHING EVIDENCE, ASSESSING CREDIBILITY AND BY NOT CONSTRUING THE EVIDENCE IN FAVOR OF THE PLAINTIFF-APPELLANT, IN DETERMINING TO GRANT THE DEFENDANT-APPELLEE'S CIVIL RULE 50(B) MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT (JNOV).
 "2. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN THE TRIAL COURT GRANTED THE DEFENDANT-APPELLEE'S JNOV MOTION AFTER THE PLAINTIFF-APPELLANT HAD PRESENTED SUBSTANTIAL EVIDENCE IN PROVING EACH ELEMENT OF AN INTENTIONAL TORT CLAIM.
 "3. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN IT PROVISIONALLY GRANTED THE DEFENDANT-APPELLEE A NEW TRIAL IN THE EVENT THE TRIAL COURT'S GRANTING OF DEFENDANT-APPELLEE'S JNOV MOTION IS OVERTURNED BECAUSE EACH ELEMENT OF PLAINTIFF-APPELLANT'S INTENTIONAL TORT CLAIM WAS SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE.
 "4. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN IT OVERTURNED THE JURY'S AWARD OF PUNITIVE DAMAGES AGAINST THE DEFENDANT-APPELLEE BECAUSE THE PLAINTIFF-APPELLANT PROVED THAT THE DEFENDANT-APPELLEE ACTED WITH MALICE IN CONSCIOUSLY DISREGARDING THE SAFETY OF THE PLAINTIFF."
 Appellant's first and second assignments of error
Mr. Harbin argues the trial court applied an improper standard in granting Ohi-Tec's motion for JNOV by weighing the evidence presented and assessing the credibility of the witnesses, and failing to construe the evidence in favor of Mr. Harbin. Additionally, Mr. Harbin argues it was error for the trial court to grant Ohi-Tec's motion for JNOV when he had presented substantial evidence proving each element of his claim We agree.
Ohio Civ.R. 50(B) states the standard for granting JNOV as follows:
 "If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the manifest weight of the evidence."
The Ohio Supreme Court has stated that when considering a motion for judgment notwithstanding the verdict, "[n]either the weight of the evidence nor the credibility of the witnesses is for the court's determination." Posin v. A.B.C. Motor Court Hotel (1976),45 Ohio St.2d 271, 275, 74 O.O.2d 427. The jury is the exclusive judge of witness credibility and therefore may give a witness's testimony "much, little, or no weight". Swan v. Skeen (1974), 40 Ohio App.2d 307,309, 69 O.O.2d 278. Moreover, the trial court must construe the evidence most strongly in favor of the non-movant. Cardinal v. Family Foot CareCenters, Inc. (1987), 40 Ohio App.3d 181, 183. A trial court should only grant a JNOV where no evidence exists to prove an essential element of the plaintiff's cause of action. Kubiszak v. Rini's Supermarket (1991),77 Ohio App.3d 679, 686.
The Ohio Supreme Court has established a three part test to determine if an intentional tort occurred. The plaintiff must prove:
 "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within his business operation; (2) knowledge by the employer that if the employee is subjected to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to so require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115.
The plaintiff is not required to prove that the actor had subjective or actual intent to accomplish the consequences, but rather the intent can be inferred from the circumstances. VanFossen v. Babcock WilcoxCo. (1988), 36 Ohio St.3d 100, 117. In order to be successful on an intentional tort claim, an "employee must prove that the employer knew that because of the exact danger posed, the employee would be harmed in some manner similar to the injury sustained or that the employer knew that because of the exact danger posed, it was highly probable (substantially certain) that the employee would be harmed in some manner similar to the injury sustained." Richie v. Rogers Cartage Co. (1993),89 Ohio App.3d 638, 644. Although evidence of the absence of prior accidents strongly suggests a lack of substantial certainty, the employee need not provide evidence of previous accidents in order to prove substantial certainty. Taulbee v. Adience (1997), 120 Ohio App.3d 11,20; Cook v. Cleveland Elec. Illum. Co. (1995), 102 Ohio App.3d 417,429-30.
The Ohio Supreme Court, in a plurality opinion, found that an employer was not substantially certain an injury would occur where a punch press, which had previously malfunctioned, malfunctioned again at the same time that a safety device designed to remove an employee's hands from the press area was improperly adjusted and failed to remove the employee's hands and the employee was injured. Pariseau v. Wedge Products, Inc. (1988), 36 Ohio St.3d 124. Although the employee had presented evidence that the employer knew about the press's malfunction, he did not present evidence that the employer was substantially certain the safety device would fail and therefore, the Court found that insufficient evidence was presented on the second element of the claim. Id.
On the element of the claim dealing with the employer requiring the employee to perform the dangerous task, the employee need not show that his employer ordered him to perform job duties to prove this element.Hannah v. Dayton Power and Light Co. (1998), 82 Ohio St.3d 482, 487. Rather the employee's burden is to present evidence that the employer, through its practices and policies, required the employee to engage in the dangerous task. Id.
The first element Mr. Harbin needed to present substantial evidence on was whether Ohi-Tec was aware of a dangerous condition. The press which injured Mr. Harbin was designed to operate at a maximum speed of 35 strokes per minute but at the time of the accident, the machine was operating at 50 strokes per minute. (Tr. at 86, 220, 406). Mr. Robinson, the safety expert, testified that major changes had to have been made to the machine in order for it to operate that fast and such changes could lead to malfunctions. (Id. at 220-221). Additionally, Ohi-Tec had modified the press in order to fill a specific production order. Ohi-Tec altered the machine to change from operating in a single strike mode to an automatic mode. (Id. at 74-75, 84-85). In so doing, Ohi-Tec essentially removed a safety device on the press, the dual palm buttons. (Id. at 84-85, 91-92). The dual palm buttons acted as a safety device by when the machine was in the single strike mode, both buttons had to be pressed with two hands in order for the machine to cycle, thus keeping the employee's hands away from the die spaces of the machine. Moreover, Mr. Harbin testified that he informed Mr. Green, the plant foreman, that the press had cycled or double clutched in automatic mode, after the button to stop the press had been hit. (Id. at 292). Additionally, Mr. Harbin testified that an oil and water solution used to lubricate the parts would leak into the front of the press and would also splatter from the ram action into the control area. (Id. at 293). Mr. Harbin testified that he reported both occurrences to Mr. Green, who stated that he would take care of it. (Id. at 294).
Additionally, even though Ohio-Tec admitted at trial that reaching into the unguarded point of operation to remove metal scraps and slugs was dangerous, evidence was presented that Mr. Green trained Mr. Harbin to reach into the machine to clear slugs with his hands or a screwdriver while the machine operated. (Id. at 62, 81, 93, 152, 153, 289-290). Mr. Anderson, the plant manager, testified that in order to prevent injury, the proper procedure when parts became stuck in the die space was to lockout and tagout the machine, rather than have an employee placing a hand in the unguarded point of operation. (Id. at 97). Ohio-Tec failed to train employees, specifically Mr. Harbin, on lockout/tagout safety devices. (Id. at 98-99, 291). Finally, Mr. Harbin presented evidence that Mr. Anderson had set up scrap boxes around the area to prevent someone from falling into the machine because of the danger it presented. (Id. at 94-95). Also, Mr. Ozvath was in the market to purchase new light curtains, a safety device which uses light sensors to shut the machine off if a hand or other object came too close to the danger area, for the presses in the month before Mr. Harbin was injured. (Id. at 123). We find this evidence when construed in favor of Mr. Harbin amounts to substantial evidence that Ohi-Tec knew of the existence of a dangerous condition.
The second element Mr. Harbin would need to establish in order to succeed on his claim was that Ohi-Tec knew that an injury in the nature of Mr. Harbin's was substantially certain to occur. Ohi-Tec argues that the lack of any injury on the press other than Mr. Harbin's tends to prove that Ohi-Tec did not know that Mr. Harbin's injury was a substantial certainty. However, Mr. Harbin presented evidence that until recently before he began working the press, it had operated in single stroke mode, wherein the dual palm buttons would have prevented an injury such as his, and a month after Mr. Harbin's injury, a light curtain was installed on the press, which also would prevent an injury like his injury. (Id. at 62-63, 123). Therefore, although no one else has been injured on the press which injured Mr. Harbin, the press only operated in the condition which injured Mr. Harbin for approximately two years.
Mr. Harbin presented evidence during Mr. Anderson's testimony that Mr. Anderson had stated in his sworn deposition that if employees put their hands into the die space of the presses repeatedly then injury is substantially certain to occur. (Id. at 66-67). Further Mr. Anderson testified that if an employee has their hand between the die spaces of the press and the machine cycles, "you're still going to lose the same number of fingers." (Id. at 412-413). Additionally, Mr. Harbin presented the testimony of Mr. Robinson, who stated in his expert opinion that Ohi-Tec was most definitely aware that injury to someone in Mr. Harbin's position was substantially certain to occur. (Id. at 238-239). In addition to this evidence, Mr. Harbin testified that he was instructed to insert his hand between the die spaces of the press to clean out the slugs without turning off the power to the machine even though according to Mr. Anderson the proper procedure to remove the slugs was to turn the power to the press off and lockout/tagout the machine. (Id. at 97-99, 152, 153, 289-290). Moreover, Mr. Harbin testified that he had informed his foreman that the press was malfunctioning by cycling after the stop buttons were pressed and that the oil and water mixture used to lubricate the press was spilling onto the control panel. (Id. at 292-293). Also, Mr. Harbin testified that shortly after he was injured Mr. Anderson called him in the hospital and stated that the accident shouldn't have happened and they knew somebody could get hurt. (Id. at 307-308). We find that the evidence presented by Mr. Harbin exceeds that of the employee in Pariseau because in Pariseau, the employee was injured due to the malfunction of two mechanical devices, only one of which did the employer have foreknowledge, whereas in this case, Mr. Harbin was injured due to the single malfunction of the press and Mr. Harbin presented evidence that Ohi-Tec was aware of the press's potential to malfunction. Although the trial court found that Mr. Harbin's testimony was unsupported, we find that this is an issue of credibility and the jury was in the proper position to judge credibility and clearly found Mr. Harbin to be credible. It is improper for this court or the trial court to substitute its judgment on credibility for that of the jury. We find that when viewing the evidence most strongly in favor of Mr. Harbin, he presented substantial evidence that Ohi-Tec knew Mr. Harbin's injury was substantially certain to occur.
Finally, Mr. Harbin had to present substantial evidence that although Ohi-Tec was aware of the dangerous condition and that an injury such as that to Mr. Harbin was substantially certain to occur, Ohi-Tec still required Mr. Harbin to perform the dangerous task. Ohi-Tec argues that they never ordered Mr. Harbin to work on the press and he never requested to be moved to another machine. However, Mr. Harbin presented evidence that he was taught and expected by Ohi-Tec to reach into the unguarded machine while it was in automatic mode if the stop button had been pressed but with the power remaining on in order to remove slugs from the die space of the press. (Id. at 152-153, 289, 292-99). Ohi-Tec did not provide its employees with special tools to remove the metal scraps and stuck parts from the press. (Id. at 148-153). Mr. Green trained Mr. Harbin to reach into the die spaces of the machine with his hand or a screwdriver to remove slugs from the press. (Id.) We find that this evidence when construed in Mr. Harbin's favor amounts to substantial evidence that raises the inference that Ohi-Tec's practices and policies required Mr. Harbin to continue to insert his hand into the die spaces of the press to remove slugs without disconnecting the power to the machine.
We find that Mr. Harbin presented substantial evidence on the three required elements of his intentional tort claim. In discrediting Mr. Harbin's testimony and weighing the evidence, the trial court erred. The jury weighed the evidence, assessed credibility and determined that Mr. Harbin established his claim by a preponderance of the evidence. As Mr. Harbin presented substantial evidence on all the essential elements of the case and reasonable minds could reach differing conclusions, the trial court erred in granting Ohi-Tec's motion for JNOV. Mr. Harbin's first and second assignments of error are found to have merit and the judgment of the trial court is reversed.
 Appellant's third assignment of error
Mr. Harbin argues that the trial court abused its discretion in granting Ohi-Tec's motion for a new trial if this Court should reverse the trial court's JNOV because Mr. Harbin presented competent, credible evidence on each element of his claim. We agree.
Civ.R. 59 states, "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: * * * (6) The judgment is not sustained by the weight of the evidence." A new trial will not be granted as against the manifest weight of the evidence if the judgment is "supported by some competent, credible evidence going to all the essential elements of the case."C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261. The Ohio Supreme Court has stated that "[w]here a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court." Mannionv. Sandel (2001), 91 Ohio St.3d 318, 321 quoting Rohde v. Farmer (1970),23 Ohio St.2d 82, paragraph one of the syllabus. An abuse of discretion amounts to more than a mere error of law or judgment but denotes the judgment was unreasonable, arbitrary, or unconscionable. State ex rel.Stevens v. Geauga Cty. Bd. of Elections (2000), 90 Ohio St.3d 223, 226. The Ohio Supreme Court has said that when reviewing a trial court's judgment to grant a new trial, the appellate court should view the evidence favorably to the trial court's action rather than the jury's verdict. Jenkins v. Krieger (1981), 67 Ohio St.2d 314, 320, 21 O.O.3d 198.
The trial court in its decision granting Ohi-Tec's motion for a new trial focused on the trial court's determination that Mr. Harbin's testimony regarding the malfunctioning press was "unsupported." Harbinv. Ohi-Tec Mfg., Inc. (Aug. 20, 2001), Clark C.P. No. 99-CV-0098, at 7. In reaching this conclusion, the trial court focused on Mr. Harbin's failure to report the malfunction to anyone other than the foreman and the lack of other employees injured by the press. Therefore, the trial court determined that the decision of the jury was against the manifest weight of the evidence. After having reviewed all the evidence presented at trial and reiterated in the first and second assignments of error, we cannot agree with the trial court that the jury's determination was against the manifest weight of the evidence. Even if Mr. Harbin's testimony on the malfunctioning of the press was unsupported, we find that the testimony of Mr. Harbin, Mr. Anderson, and Mr. Robinson amounted to competent, credible evidence on all of the elements of Mr. Harbin's claim. Therefore, as Mr. Harbin presented competent, credible evidence on the essential elements of his claim, the judgment of the trial court in granting a new trial was unreasonable and an abuse of discretion. Mr. Harbin's third assignment of error has merit and is sustained.
 Appellant's fourth assignment of error
Mr. Harbin argues that the trial court erred in overturning the jury's award of punitive damages to Mr. Harbin. We agree.
Punitive damages are allowed in an Ohio intentional tort action if a plaintiff demonstrates by clear and convincing evidence that the defendant acted with malice. Zoppo v. Homestead Inc. Co. (1994), 71 Ohio St.3d 552,557; Preston v. Murty (1987), 32 Ohio St.3d 334. The Ohio Supreme Court set out the elements constituting malice as follows:
 "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston, supra.
Moreover, "malice can be inferred when an employer allows commonly recognized and easily correctable dangers to exist that are substantially certain to eventually injure an employee." Taylor v. Triple A in the USA
(1995), 107 Ohio App.3d 14, 22.
Ohi-Tec argues that Mr. Harbin was unable to establish knowledge on the part of Ohi-Tec and without such knowledge Ohi-Tec could not be found to have consciously disregarded the rights and safety of Mr. Harbin. Also, Ohi-Tec argues that the conduct and surrounding circumstances, specifically the lack of injuries suffered by other employees from this machine, only indicates that the machine was not malfunctioning but was operating safely. However, Mr. Harbin presented evidence in his testimony that he had informed Mr. Green that the press was malfunctioning and cycling after the stopping button had been pressed. (Tr. at 292-293). Also, Mr. Harbin testified that shortly after he was injured Mr. Anderson called him in the hospital and stated that the accident shouldn't have happened and they knew somebody could get hurt. (Id. at 307-308). Additionally, the testimony of Mr. Anderson and Mr. Robinson supported Mr. Harbin's position that Ohi-Tec was substantially certain that an injury would occur from an employee placing his hands in the die spaces of the press. (Id. at 66-67; 412-413; 238-239).
Additionally, Mr. Harbin presented evidence that Ohi-Tec trained him to insert his hands into the die space of the press without disconnecting the power to the press even though the proper procedure was for the press to be locked out and tagged out. (Id. at 97-99, 152, 153, 289). Moreover, Ohi-Tec admitted that it needed a light curtain on the press in order to prevent this type of injury from occurring and was considering purchasing a light curtain at the time of the accident. (Id. at 120-121, 123). Moreover, Ohi-Tec removed the safety device of the dual palm buttons, which would have prevented Mr. Harbin's injury by altering the machine to function in an automatic mode. (Id. at 84-85, 91-92). We find that Mr. Harbin presented substantial evidence supporting that instructing employees to insert their hands into this press without disconnecting the power to the press and without the use of either a light curtain or the dual palm buttons was a recognized and easily correctable danger which Ohi-Tec was substantially certain would cause injury. Thus, we find substantial evidence that Ohi-Tec acted with conscious disregard for Mr. Harbin's safety. We find that Mr. Harbin presented sufficient evidence to support the jury's determination that Ohi-Tec acted with malice and its jury award of punitive damages. Mr. Harbin's fourth assignment of error is sustained and the judgment of the trial court is reversed.
The judgment of the trial court is reversed and remanded for the trial court to enter judgment for the plaintiff as found by the jury and to conduct any further proceedings as may be appropriate.
WOLFF, P.J. and FAIN, J., concur.