OPINION
{¶ 1} Third-party Plaintiffs-Appellants, Keith, Theodore and Nancee Homan (hereinafter jointly referred to as "Appellants") appeal two Mercer County Common Pleas Court judgments. The first judgment granted summary judgment in favor of third-party Defendant-Appellee, Cincinnati Casualty Company ("Cincinnati Casualty"). The second judgment granted summary judgment in favor of third-party Defendant-Appellee, Republic Franklin Insurance Company ("Republic Franklin"). Appellants maintain that the trial court erred in finding that R.C. 3937.18(K)(1) excluded underinsured motorist coverage under the Cincinnati Casualty policy. Appellants also maintain that the court erred in finding Appellants were not insureds under the Republic Franklin business auto and commercial umbrella policies. Finding the express language of each policy excludes Appellants from coverage, we affirm the judgments of the trial court.
 {¶ 2} On July 15, 2000, Keith Homan, a minor, sustained physical injuries, resulting from a single vehicle accident that took place in Gibson Township in Mercer County. Erin Weitzel was driving a vehicle owned by her father, Phillip Weitzel, when she negligently lost control of it, causing the vehicle to travel off the roadway, strike several trees and flip over. There were four passengers, including Keith, occupying the vehicle at the time of the accident. Each sustained physical injuries.
 {¶ 3} At the time of the accident, Weitzel's vehicle was covered under a personal automobile liability insurance policy issued by Cincinnati Casualty. The Cincinnati Casualty policy provided bodily injury liability coverage of $250,000 per person and $500,000 per accident. Additionally, Weitzel's policy provided uninsured and underinsured motorists (UM/UIM) coverage of $250,000 per person and $500,000 per accident.
 {¶ 4} This case initally arose from an interpleader complaint filed by Cincinnati Company, Cincinnati Casualty's parent corporation. Pursuant to the underlying action, the trial court ordered Cincinnati Casualty to pay out the entire $500,000 per accident limit to the four passengers for personal injuries and damages arising from the accident. Of that amount, Cincinnati Casualty was ordered to pay Keith $200,000 for his injuries. Subsequently, Appellants presented a claim against the Cincinnati Casualty UM/UIM policy in the amount of $50,000. Cincinnati Casualty denied coverage for the UM/UIM claim, citing policy and statutory restrictions. For the purposes of resolving the disputed coverage issues, the parties stipulated that Keith's claim for damages exceeded $250,000.
 {¶ 5} Thereafter, Cincinnati Casualty moved for summary judgment, claiming coverage was statutorily barred under R.C.3937.18(K)(1). Appellants filed a motion in opposition and a cross-motion for summary judgment. On August 7, 2001, the trial court entered summary judgment in favor of Cincinnati Casualty, finding that R.C. 3937.18(K)(1) did, in fact, bar coverage.
 {¶ 6} Also at the time of the accident, Keith and Nancee Homan were resident relatives to Theodore Homan. Theodore was an employee of Chickasaw Machine and Tool, Inc ("Chickasaw"). Chickasaw maintained a business auto policy, providing UM/UIM coverage in the amount of one million dollars per accident, as well as a commercial umbrella liability policy, providing additional coverage for bodily injury liability of one million dollars per accident. Republic Franklin maintained both Chickasaw's business auto policy and its umbrella policy.
 {¶ 7} In April of 2001, Appellants filed a third-party complaint against Republic Franklin, seeking numerous declarations as to the UM/UIM coverage under the business auto policy and the umbrella policy issued to Chickasaw. Subsequently, both parties moved for summary judgment. Again, on August 7, 2001, the court entered summary judgment in favor of Republic Franklin, finding Appellants were not entitled to UM/UIM coverage under either the business auto policy or the umbrella policy.
 {¶ 8} It is from the August 7, 2001 judgments Appellants appeal, presenting the following assignments of error for our review.
 Assignment of Error No. 1 The trial court erred to the prejudice of appellants, KeithHoman, Theodore Homan, and Nancee Homan, in granting summaryjudgment in favor of appellee, Cincinnati Casualty Company, anddenying appellants' motion for summary judgment on their claimfor declaratory relief on Cincinnati Personal Auto Policy numberAFA 8059779.
 {¶ 9} In the first assignment of error, Appellants contends that neither R.C. 3937.18(K)(1) nor the Cincinnati Casualty policy exclude Keith from coverage of the fifty thousand dollars under the UM/UIM endorsement of the Weitzel's policy.
 Summary Judgment Standard {¶ 10} It is well-established under Ohio law that a court may not grant a motion for summary judgment unless the record demonstrates: (1) that no genuine issue of material fact remains to be litigated; (2) that the moving party is entitled to judgment as a matter of law; and (3) that, after construing the evidence most strongly in the nonmovant's favor, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995),73 Ohio St.3d 679, 686-687. In ruling on a summary judgment motion, the trial court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmovant. Jacobs v. Racevskis
(1995), 105 Ohio App.3d 1, 7. Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the adverse party. Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485.
 {¶ 11} Appellate review of summary judgment determinations is conducted on a de novo basis. Griner v. Minster Bd. of Edn.
(1998), 128 Ohio App.3d 425, 430. Therefore, this Court considers the motion independently and without deference to the trial court's findings. J.A. Industries, Inc. v. All AmericanPlastics, Inc. (1999), 133 Ohio App.3d 76, 82. Further, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co.,148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25, citing State ex rel. Cassels v.Dayton City School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217,222.
 {¶ 12} In its journal entry, which granted summary judgment in favor of Cincinnati Casualty, the trial court relied upon R.C.3937.18(K)(1). Specifically, R.C. 3937.18(K)(1) provides:
(K) As used in this section, `uninsured motor vehicle' and`underinsured motor vehicle' do not include any of the followingmotor vehicles:
 (1) A motor vehicle that has an applicable liability coveragein the policy under which the uninsured or underinsured motoristscoverage are provided.
The court determined that the motor vehicle being operated by Weitzel was covered under the Cincinnati Casualty policy for the same amounts in both the liability and UM/UIM policies. Thus, based on the above statute, the court found that Weitzel's vehicle, which had applicable liability coverage, could not qualify as an underinsured motor vehicle. Accordingly, the court determined, as a matter of law, that UM/UIM coverage "does not exist for Keith Homan, a passenger who was injured in the vehicle and received liability insurance coverage benefits under the Cincinnati [Casualty] liability policy that provided coverage for the Weitzel vehicle." Finding the statute restricted coverage, the court did not make a coverage determination based on the expressed language of the Cincinnati Casualty UM/UIM endorsement.
 {¶ 13} Because R.C. 3937.18(K)(1) merely excepted certain vehicles from the definition of "uninsured and underinsured motor vehicles" rather than acted as an absolute bar to recovery as the trial court held, the trial court's reliance upon this provision was improper. However, we find that its granting of summary judgment in favor of Cincinnati Casualty was appropriate based upon the clear and unambiguous provisions in the Cincinnati Casualty UM/UIM endorsement. Diamond Wine, 148 Ohio App.3d at ¶ 25. Accordingly, we find coverage was properly denied.
 {¶ 14} Turning to the Cincinnati Casualty policy, we note that it is well settled that an insurance policy is a contract and the relationship between the insured and the insurer is purely contractual in nature. Nationwide Mut. Ins. Co. v. Marsh
(1984), 15 Ohio St.3d 107, 109. Insurance coverage is determined by reasonably construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211. "Where provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." Id. at syllabus (citations omitted). However, where the intent of the parties to a contract is evident from the clear and unambiguous language used, a court must not read into the contract a meaning not contemplated or placed there by an act of the parties to the contract. Gomolka v. State Auto. Mut. Ins. Co. (1982),70 Ohio St.2d 166, 168. The statutory law in effect on the date the policy was issued is the law to be applied. Ross v. Farmer Ins.Group (1998), 82 Ohio St.3d 281, 287.
 {¶ 15} Looking at the Cincinnati Casualty UM/UIM endorsement, subpart (A) of part (C) of the policy provides, in pertinent part:
We will pay compensatory damages which a covered person islegally entitled to recover from the owner or operator of:
 1. An uninsured motor vehicle as defined in SECTIONS 1., 2.,and 4. of the definition of an uninsured motor vehicle because ofbodily injury:
 a. Sustained by a covered person; and
 b. Caused by an accident.
Subpart (B) of the UM/UIM endorsement defines a "covered person," in its relevant part:
Any other person occupying your covered auto. Subpart (C), in its pertinent parts, defines an uninsured motor vehicle as:
Uninsured motor vehicle means a land motor vehicle or trailerof any type:
 2. Which is an underinsured motor vehicle. An underinsuredmotor vehicle means a land motor vehicle or trailer for which thesum of all liability bonds or policies applicable at the time ofan accident provides at least the amounts required by theapplicable law where your covered auto is principally garaged buttheir limits are less than the limit of insurance of thiscoverage.
And, finally, subpart (D) provides the following exclusions:
However, uninsured motor vehicle does not include any vehicleor equipment:
 1. Owned by or furnished or available for the regular use ofyou or any family member.
 {¶ 16} Pursuant to the UM/UIM endorsement, Appellants are only entitled to coverage if Keith was a "covered person" and Weitzel's vehicle was an "underinsured motor vehicle." Based on the above definition of a "covered person," Keith, as "any other person in occupying your covered auto," is a covered person under the policy. Thus, the next step is to determine whether Weitzel's vehicle was an "underinsured motor vehicle."
 {¶ 17} Pursuant to subpart (C) an underinsured motor vehicle is a vehicle in which the cumulative total of all applicable liability policies provide for at least the state minimum. However, the cumulative total of those limits "are less thanthe Limit of Insurance of this coverage." In other words, the Cincinnati Casualty UM/UIM endorsement limits, which is "the limit of insurance of this coverage," cannot be the same or more than the underlying liability policy limits. Here, the applicable liability policy in this case carried coverage of $250,000 per person and $500,000 per accident. The limits of "this coverage" under the UM/UIM endorsement were also $250,000 per person and $500,000 per accident. Thus, the limits of the liability policy were not less than the limits of the UM/UIM endorsement. Accordingly, Weitzel's vehicle does not qualify as an underinsured motor vehicle under subpart (C) of the UM/UIM endorsement.
 {¶ 18} Further, coverage is excluded under subpart (D) of the UM/UIM endorsement. Under subpart (D) vehicles owned by "you or any family member" are excluded as an uninsured vehicle. The term "you" is defined by the Cincinnati Casualty policy as the named insured, which was shown on the declaration page as Phillip Weizel. In this case, Weitzel owned the car involved in the accident. Thus Weitzel's vehicle is excluded under subpart (D), since the policy excludes any vehicles owned by the named insured, Weitzel.
 {¶ 19} Having found that Weitzel's vehicle was not in an uninsured motor vehicle, Appellants are not entitled to UM/UIM coverage pursuant to the Cincinnati Casualty UM/UIM endorsement. Accordingly, Appellants first assignment of error is overruled.
 Assignment of Error No. II The trial court erred to the prejudice of appellants, KeithHoman, Theodore Homan, and Nancee Homan, in granting summaryjudgment in favor of appellee, Republic Franklin InsuranceCompany, and denying appellants' motion for summary judgment ontheir claims for declaratory relief on Republic FranklinCommercial Auto Policy Number CCP 2 90 57 80.
 Assignment of Error III The trial court erred to the prejudice of appellants, KeithHoman, Theodore Homan, and Nancee Homan, in granting summaryjudgment in favor of appellee, Republic Franklin InsuranceCompany, and denying appellants' motion for summary judgment ontheir claims for declaratory relief on Republic Franklin UmbrellaLiability Policy Number CX 2 90 57 81.
 {¶ 20} In the second assignment of error, Appellants contend that the court erred in granting summary judgment to Republic Franklin, because they were entitled to UM/UIM coverage under the business auto policy pursuant to Scott-Pontzer v. Liberty Mut.Ins. Co. (1999), 85 Ohio St.3d 660. In the third assignment of error, Appellants further maintain they are entitled to coverage under the Republic Franklin umbrella policy. Because these assignments of error are interrelated, we will address them together.
 {¶ 21} Pursuant to the Ohio Supreme Court's recent decision in Westfield Ins. v. Galatis,[1] 100 Ohio St.3d 216,2003-Ohio-5849, at ¶ 2, motion for reconsideration denied at100 Ohio St.3d 1548, the Scott-Pontzer holding and rationale has been limited "by restricting the application of [UM/UIM] coverage issued to a corporation to employees only while they are acting within the course and scope of their employment unless otherwise specifically agreed."
 {¶ 22} In Galatis, the Court noted:
The general intent of a motor vehicle insurance policy issuedto a corporation is to insure the corporation as a legal entityagainst liability arising from the use of motor vehicles. It issettled law in Ohio that a motor vehicle operated by an employeeof a corporation in the course and scope of employment isoperated by and for the corporation and that an employee, undersuch circumstances, might reasonably be entitled to uninsuredmotorist coverage under a motor vehicle policy issued to hisemployer. However, an employee's activities outside the scope ofemployment are not of any direct consequence to the employer as alegal entity. An employer does not risk legal or fiscal liabilityfrom an employee's operation of a non-business-owned motorvehicle outside the scope of employment is extraneous to thegeneral intent of the commercial auto policy. Id. at ¶ 20 (citations omitted).
 {¶ 23} Accordingly, the Court found that "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for [UM/UIM] coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." Id. at ¶ 62.
 {¶ 24} It is undisputed that Keith Homan was not a Chickasaw employee. Further, neither the business auto policy nor the Ohio UM/UIM endorsement extends coverage for employees or their family members acting outside the course and scope of employment. Thus, Appellants are not insured under the business auto policy. Accordingly, the second assignment of error is overruled.
 {¶ 25} Appellants also maintain they are entitled to coverage under the Republic Franklin umbrella policy. Section I of the umbrella policy, which defines the terms of excess coverage, provides:
COVERAGE A — EXCESS LIABILITY
* * *
a. We will pay those sums, in excess of the limits ofliability under the terms of any `underlying insurance,' that theinsured becomes legally obligated to pay as damages because of`injury' or `wrongful act,' to which this insurance applies,provide that the `underlying insurance' also applies, or wouldapply but for the exhaustion of its applicable limits ofinsurance.
* * *
This insurance is subject to the same terms, conditions,agreements, exclusions and definitions as the `underlyinginsurance' except with respect to any provision to the contrarycontained in this insurance.
Section V provides the following definitions:
`Underlying insurance' means the liability insurance coverageprovided under policies shown in the Declarations, for the limitsand periods indicated.
Section I also provides the terms of extended coverage under the umbrella policy as follows:
COVERAGE B — EXTENDED LIABILITY
 We will pay those sums that the insured becomes legallyobligated to pay as damages because of "injury" to which thisinsurance applies.
Further, section II designates the insured under Coverage B for a corporation as the officers, directors and stockholders with respect to their duties, as well as employees for acts within the scope of their employment.
 {¶ 26} Here the Republic Franklin commercial umbrella liability policy declarations listed the general commercial liability policy, the business auto policy and the employer's liability policy. Thus, based on the express language of the umbrella policy, Appellants must either be an insured under the one of the underlying policies or subject to coverage for an injury enumerated under Coverage B in order to qualify for coverage under the umbrella policy.
 {¶ 27} Based on the above analysis, Appellants were not insured under the underlying insurance. Thus, they are not entitled to coverage under Coverage A. Further, Appellants do not qualify for coverage under Coverage B, since Keith was not a Chickasaw officer, director, stockholder or employee. Accordingly, since Appellants were not entitled to coverage under either Coverage A or B, the third assignment of error is overruled.
 {¶ 28} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Cupp and Bryant, JJ., concur.
[1] In their supplemental brief Appellants argue that Galatis
should not be retroactively applied. The Galatis court applied its holding to the parties before it, and since the issuance of that decision, the Supreme Court of Ohio has consistently reversed judgments, relying on its decision in Galatis. E.g.,Burkhart v. CNA Ins. Co., 100 Ohio St.3d 359, 2003-Ohio-6604
(reversing without opinion on the authority of Galatis);Tucker v. Wilson, 100 Ohio St.3d 360, 2003-Ohio-6742 (same). It therefore follows that the Supreme Court intended that its holding in Galatis be applied to open cases still on direct review, such as the present action.