OPINION
{¶ 1} Defendants-Appellants, Richard and Robin Monroe, appeal a judgment of the Crawford County Common Pleas Court, finding that neither collision nor liability insurance existed on the Monroes' 1994 Ford Mustang under their automobile insurance policy with Plaintiff-Appellee, Progressive Max Insurance Company ("Progressive"). The Monroes claim that the trial court's judgment incorrectly interpreted the insurance contract and was against the manifest weight of the evidence. Having reviewed the entire record, we find that the trial court's judgment correctly construed the insurance contract and was supported by competent and credible evidence. Accordingly, we affirm the decision of the trial court.
 {¶ 2} On September 4, 1997, Progressive issued an insurance policy for the Monroes on three cars, a 1991 Nissan Short Bed, a 1987 Dodge Colt, and a 1994 Ford Mustang. Subsequently, Richard put the Mustang into storage and removed all of the insurance coverage from the Mustang except for comprehensive coverage. Comprehensive coverage is defined under the Monroes' insurance contract as a loss "caused by any event other than collision" such as theft, fire, or vandalism.
 {¶ 3} In November of 1997, the Nissan Short Bed became inoperable. As a result, Richard decided to use the Mustang to drive to a doctor's visit. Before he left the house, he instructed Robin to call their insurance agent and get full coverage on the Mustang. He left the home around 8:15 a.m.
 {¶ 4} Enroute to his doctor's office, Richard was involved in an automobile accident. The accident was recorded as occurring at 8:50 a.m. on the Crawford County Sheriff's Department's official accident report. The accident was reported to the police by a bystander at 8:52 a.m. Richard testified that the accident occurred a little after nine by his watch, but that he set his watch to run a few minutes fast.
 {¶ 5} Around the time of the accident, Robin was attempting to call the Monroes' insurance agent and add full coverage to the Mustang. Robin testified that she called the insurance agent around 8:51 or 8:52 a.m. However, testimony from the insurance agent placed the call at between 8:55 and 9:00 a.m. The declarations page generated by Progressive reflected a change in the Monroes' policy effective at 9:02 a.m.
 {¶ 6} Because of the accident, the Mustang suffered around $8,000 in damage. Richard also became a defendant in a civil suit filed by the passengers of the other car involved in his accident. The Monroes claimed that full coverage had attached to the Mustang prior to the accident and sought indemnity and defense from Progressive in the civil suit based upon liability coverage contained in the insurance contract. They also sought compensation for the damage the Mustang suffered based upon collision coverage in the insurance contract. Progressive claimed that full coverage had attached to the Mustang after the accident and denied these claims. Progressive asserts that at the time of the accident the Mustang had comprehensive coverage exclusively.
 {¶ 7} Progressive filed a declaratory judgment action, asking the court to determine what insurance coverage the Mustang had at the time of the accident. The Monroes filed a motion for summary judgment, but the motion was denied by the trial court. A bench trial was held, and the trial court found that the Mustang was only covered by comprehensive coverage at the time of the accident. As such, the trial court found that Progressive had no duty to defend or indemnify the Monroes or compensate them for the loss on the Mustang. From this judgment the Monroes appeal, presenting five assignments of error for our review. Due to the nature of the assignments of error, we will address them out of numerical order.
 Assignment of Error I The trial court committed error ruling that no liabilityinsurance coverage existed protecting Defendants-Appellants whenthe policy clearly affords said coverage from the plain andordinary terms contained therein.
 Assignment of Error II The trial court committed reversible error in failing tointerpret the insurance policy strictly against the insurancecarrier, Progressive Insurance Company.
 Assignment of Error III The trial court committed reversible error when it failed torule that the Appellants were protected with liability insurancewhen the agent for Progressive Insurance Company clearly admittedsaid coverage should exist.
 Assignment of Error IV The trial court committed reversible error when it failed togrant the partial summary judgment for the Appellant.
 Assignment of Error V The trial court committed reversible error in finding nocollision nor liability coverage exists covering the 1994 FordMustang when the Plaintiff failed to meet its burden of proofthat the coverage was added after the accident of 11-25-97.
 Assignment of Error IV {¶ 8} In the fourth assignment of error, the Monroes contend that the trial court erred by failing to grant their motion for summary judgment.
 {¶ 9} An appellate court reviews a summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chem. Corp.
(1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphyv. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 10} The exact time the accident occurred and the exact time full coverage attached to the Mustang were both disputed at trial. It would have been improper for the trial court to grant a summary judgment motion when the nature and extent of the insurance contract itself was contested. Herein, it is clear that material issues of fact existed and that the summary judgment motion was properly denied. Accordingly, the Monroes' fourth assignment of error is overruled.
 Assignments of Error I, II, III {¶ 11} In the first three assignments of error, the Monroes assert that the trial court erred in finding there was no liability coverage for the Mustang based upon the original insurance contract. In these assignments of error the Monroes are not contending that liability coverage was added as a result of Robin's call to the insurance agent the day of the accident. Rather, they claim that the Mustang always had liability coverage under the original terms of the insurance contract. They maintain that in failing to find liability coverage for the Mustang, the trial court incorrectly interpreted the terms of the contract.
 {¶ 12} An insurance agreement is a contract and should be interpreted by a reviewing court as such. Tuthill Energy Systemsv. Employers Ins. of Wausau, 3rd Dist. No. 2-03-25, 2004-Ohio-1394, 2004 WL 549808, at ¶ 7, quoting Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512,2002-Ohio-2842, at ¶ 8. The reviewing court must examine the contract as a whole and presume that the intent of the parties is included in the language of the contract. Kelly v. Med. LifeIns. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. "Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties." Tuthill, at ¶ 7. Only if there are ambiguities in the language of the insurance contract will the reviewing court interpret the contract strictly against the insurer and in favor of coverage for the insured. Hacker v.Dickman (1996), 75 Ohio St.3d 118, 119-120. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, at ¶ 11.
 {¶ 13} The first section of the insurance contract herein deals with liability coverage. The part of this section outlining the coverage for bodily injury states:
[I]f you pay a premium for bodily injury liability coverage,we will pay damages, other than punitive or exemplary damages,for bodily injury for which an insured person becomes legallyresponsible because of an accident arising out of the ownership,maintenance, or use of a vehicle.
 {¶ 14} There is also a part of the liability section outlining liability coverage for property damage caused in an accident. This part is identical to the above bodily injury clause except the phrase "property damage" is substituted for the phrase "bodily injury."
 {¶ 15} The liability section also contains a list of exclusions. One of these exclusions states:
Coverage under this Part I [the liability coverage section],including our duty to defend, does not apply to bodily injury orproperty damage resulting from your operation or use of a vehicleowned by you, other than a covered vehicle.
It is undisputed that the Monroes' liability arose from Richard's operation of a vehicle they owned. Therefore, liability coverage will effectively have been excluded under this provision unless the Mustang qualifies as a "covered vehicle."
 {¶ 16} Covered vehicle is defined in the insurance contract as "any vehicle shown on the declarations page." The Monroes argue that because the Mustang is listed on the declarations page it automatically fits under the definition of covered vehicle. We disagree.
 {¶ 17} A further exploration of the insurance agreement reveals that the declarations page is defined as:
[T]he report from us [Progressive] listing:
* * *
d. the specified vehicles covered by this policy;
 e. the types of coverage for each such vehicle.
The declarations page also has a provision that states, "[t]he coverage is applicable only if a premium is indicated." A review of the declarations page reveals that prior to the accident, a premium on the Mustang was only charged for comprehensive coverage.
 {¶ 18} When the definition of a covered vehicle is read in conjunction with the definition of the declarations page and the provision on the declarations page itself, it is clear that under the terms of the insurance contract a vehicle is only considered a covered vehicle for the purposes of that coverage for which a premium is listed on the declarations page. For instance, the Mustang would be a covered vehicle under the insurance contract for the purposes of the comprehensive coverage section because a premium is listed on the declarations page for the Mustang under this coverage. However, the Mustang would not be a covered vehicle for the purposes of the liability coverage section because a premium is not listed on the declarations page for the Mustang under the liability coverage.
 {¶ 19} Accordingly, the Mustang does not qualify as a "covered vehicle" under the insurance contract section dealing with liability coverage and any liability insurance on the Mustang was specifically excluded. Therefore, the Monroes' first three assignments of error are overruled, and the judgment of the trial court is affirmed.
 Assignment of Error V {¶ 20} In the fifth assignment of error, the Monroes challenge the trial court's finding that the Mustang did not have full insurance coverage at the time of the accident. The Monroes claim that the manifest weight of the evidence supports a finding that the accident occurred after Robin had called the insurance agency and added the full coverage to the Mustang.
 {¶ 21} It is undisputed that the agent Robin talked to the day of the accident had binding authority and that full coverage attached to the Mustang immediately after it was requested. The controversy in this case centers around when the accident took place and when Robin made the request for full coverage on the Mustang. This court must determine whether the trial court's judgment was supported by competent and credible evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr., Co. (1978),54 Ohio St.2d 279, 280-281.
 {¶ 22} At trial, there was testimony from the police officer responding to the scene of the accident that the wreck occurred at 8:50 a.m. The officer said that he got the time of the accident from the parties involved in the accident when he arrived at the scene. Furthermore, the official police phone log listed 8:52 as the time the accident was reported to the police. The insurance agent testified that Robin had called in the full coverage on the Mustang at sometime between 8:55 and 9:00 a.m. Progressive's declaration sheet reflected a time of 9:02 as the time they were informed of the changes. Robin's insurance agent and a Progressive agent both testified that it would have taken a few minutes for Robin's agent to contact Progressive.
 {¶ 23} Looking at all of the evidence as a whole, it appears that there was competent and credible evidence supporting the trial court's finding that full coverage was not placed on the Mustang until after the accident had already occurred. Accordingly, the Monroes' fifth assignment of error is overruled, and the judgment of the trial court is affirmed.
 {¶ 24} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Bryant and Cupp, JJ., concur.