OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Plaintiff-Appellant, Carol A. Schreck, appeals from a judgment of the Crawford County Court of Common Pleas, granting summary judgment to Defendants-Appellees, Western Reserve Group/Western Reserve Mutual Casualty Company and Lightning Rod Mutual Insurance Company (hereafter collectively referred to as "Western Reserve"). Schreck maintains that the trial court committed reversible error when it found that the underinsured motorist ("UIM") coverage provided by the Western Reserve automobile policies issued to her husband did not provide coverage for her under compensated wrongful death losses she suffered as a result of her mother's death. After reviewing the entire record, we find that the motor vehicle responsible for Schreck's mother's death was not an underinsured motor vehicle as defined by either of the two Western Reserve automobile insurance policies. Therefore, Schreck was not entitled to recover any damages from Western Reserve based on the UIM provisions in those policies. Accordingly, Schreck's sole assignment of error is overruled, and the judgment of the trial court is affirmed.
 {¶ 3} On December 17, 2000, Schreck's mother, Dorothy Chester, was a passenger in an automobile owned and operated by Fred Grimm. As a result of Grimm's negligent operation, the vehicle was involved in an accident that resulted in Chester's death.
 {¶ 4} At the time of the accident, Grimm had automobile liability coverage through United Ohio Insurance Company ("United Ohio") with liability limits of $100,000 per person and $300,000 per accident. Eventually, United Ohio tendered its policy limit of $100,000 to Chester's estate. In addition, Grimm personally contributed an additional $50,000. Thus, the estate received a total of $150,000 from Grimm and his insurance company in compensation for Chester's death. After the deduction of medical liens from this amount, each of the decedent's four surviving children, including Schreck, received $34,037.97.
 {¶ 5} Also at the time of the accident, Schreck's husband had two automobile insurance policies through Western Reserve. Schreck brought an action for declaratory judgment against Western Reserve, seeking a determination by the trial court that she was entitled to UIM coverage for the wrongful death of her mother pursuant to these policies.
 {¶ 6} In response to Schreck's declaratory judgment action, Western Reserve filed a summary judgment motion alleging that UIM coverage was not available to Schreck under the terms of either policy. Schreck filed a response to Western Reserve's summary judgment motion and a cross-motion for summary judgment. After considering both summary judgment motions and all of the evidence in the record, the trial court granted Western Reserve's motion for summary judgment and denied Schreck's motion. Schreck appeals from this judgment, presenting one assignment of error for our review.
 Assignment of Error The trial court committed reversible error, abused its discretion andits decision was against the manifest weight of the evidence which wasprejudicial to Plaintiffs/Appellants when the Trial Court granted theDefendant/Appellee Western Reserve's motion for summary judgment anddenied the Plaintiff/Appellant's cross-motion for summary judgment byfinding there was no underinsured motorist coverage available underWestern Reserve Automobile policies issued to the Plaintiffs/AppellantsCarol and Michael Schreck.
 {¶ 7} In her sole assignment of error, Schreck maintains that the trial court erroneously granted Western Reserve summary judgment. She contends that she was entitled to UIM coverage under both of the Western Reserve policies.
 Standard of Review {¶ 8} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton CitySchool Dist. Bd. of Ed. (1994), 69 Ohio St.3d 217, 222. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C);Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
 {¶ 9} Herein, there are no disputed issues of material fact. Both Western Reserve insurance policies contain identical UIM provisions, and the parties agree that Schreck qualifies as an insured under both policies. Furthermore, it is undisputed that Chester's estate received $150,000 from Grimm and his insurance company in compensation for Chester's death and that the liability limits on Grimm's automobile insurance at the time of the accident were $100,000 per person and $300,000 per accident. Both sides also agree that Schreck's personal share of the $150,000 was only $34,037.97 and that the UIM limits on her husband's Western Reserve policies are $100,000 per person and $300,000 per accident.
 {¶ 10} The controversy stems from the interpretation of the UIM provisions in the Western Reserve policies. Schreck asserts that her mother's death resulted in her suffering an under compensated loss and that she is entitled to recover the difference between the $34,037.97 she received for her mother's death and the $100,000 per person limit for UIM coverage in the Western Reserve policies. On the other hand, Western Reserve claims that Schreck is not entitled to UIM coverage for the loss of her mother under the terms and conditions of the policies.
 Interpreting Insurance Agreements {¶ 11} An insurance policy is a contract, and the relationship between the insured and the insurer is purely contractual in nature. La PlasCondo. Assoc. I and II v. Utica Ntl. Ins. Group, 3rd Dist. No. 5-04-15, 2004-Ohio-5347, at ¶ 19, citing Nationwide Mut. Ins. Co. v. Marsh
(1984), 15 Ohio St.3d 107, 109. As such, courts must construe the language of an insurance policy as a matter of law. Wilson v. Smith, 9th Dist. No. 22193, 2005-Ohio-337, at ¶ 9, citing Leber v. Smith,70 Ohio St.3d 548, 553, 1994-Ohio-361.
 {¶ 12} In interpreting an insurance agreement, a court must first consider the language of the policy itself and give the terms in the policy their plain and ordinary meaning. Wilson at ¶ 9, citing Gomolkav. State Auto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166, 167-168. A court may look no further than the four corners of the insurance policy to find the intent of the parties when the language of the contract is clear and unambiguous. Tuthill Energy Systems v. RJ. Burke Ins. Agency, 3rd Dist. No. 2-03-25, 2004-Ohio-1394, at ¶ 7, citing Kelly v. Med. Life Ins. Co.
(1987), 31 Ohio St.3d 130, paragraph one of the syllabus. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Progressive Max Ins. Co. v. Monroe, 3rd Dist. No. 3-03-28, 2004-Ohio-1852, at ¶ 12, quoting Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 11.
 {¶ 13} However, where there are ambiguities in the language of the insurance policy, the reviewing court must interpret the insurance agreement strictly against the insurer and in favor of coverage for the insured. Progressive at ¶ 12, citing Hacker v. Dickman, 75 Ohio St.3d 118,119-120, 1996-Ohio-98. Additionally, a court may consider extrinsic evidence to ascertain the parties' intention when reviewing an ambiguous policy. Westfield at ¶ 12.
 The Western Reserve Policies {¶ 14} The relevant language of the Western Reserve policies is as follows:
A. We will pay compensatory damages which an "insured" is legallyentitled to recover from the owner or operator of:
 1. An "uninsured/underinsured motor vehicle" as defined in Sections1., 2., and 4. of the definition of an "uninsured/underinsured motorvehicle" because of "bodily injury":
 a. Sustained by an "insured"; and
 b. Caused by an accident.
The above language is unambiguous. Under this provision, Western Reserve only agreed to pay compensatory damages that an insured became entitled to recover from the owner or operator of either an uninsured or underinsured vehicle.
 {¶ 15} Schreck does not claim that Grimm was driving an uninsured vehicle. Instead, she maintains that his vehicle qualifies as an underinsured motor vehicle under the definitions in the policies.
 {¶ 16} An underinsured vehicle is defined by the Western Reserve policies as a motor vehicle "[t]o which a bodily injury liability bond or policy applies at the time of the accident, but only if its limit ofbodily injury liability is less than the limit of liability for thiscoverage." (Emphasis added.) As already stated, it is undisputed that Grimm had liability coverage on his automobile at the time of the accident in the amount of $100,000 per person and $300,000 per accident. Additionally, it is undisputed that the UIM limits of the Western Reserve policies are $100,000 per person and $300,000 per accident. Therefore, a plain reading of the unambiguous language in the insurance contract leads us to the conclusion that Grimm's car was not an "underinsured motor vehicle" as defined by the insurance policies. See, Cincinnati Companiesv. Albers, 3rd Dist. No. 10-03-10, 2004-Ohio-806, at ¶ 17. Accordingly, Schreck was not entitled to UIM coverage under the terms and conditions of the Western Reserve insurance policies.
 {¶ 17} We also note that this definition of UIM coverage is in conformance with the UIM coverage that was required by R.C. 3937.18(A)(2). It is axiomatic that provisions in an automobile insurance policy that vary from the statutory requirements of R.C. 3937.18 are unenforceable.McDaniel v. Westfield Co., 10th Dist. No. 03AP-441, 2003-Ohio-6662, at ¶ 11, citing Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281,287. "However, a clear, unambiguous underinsured motorist coverage provision is valid and enforceable as long as the provision is not contrary to the coverage mandated by R.C. 3937.18." McDaniel at ¶ 11, citing Moore v. State Auto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 28-29.
 {¶ 18} Both of the applicable versions of R.C. 3937.18(A)(2)[1]
state that UIM coverage "shall provide protection for insureds * * *where the limits of coverage available for payment to the insured underall bodily injury liability bonds and insurance policies covering personsliable to the insured are less than the limits for the insured'suninsured motorist coverage."[2] (Emphasis added.) This definition of an underinsured motor vehicle is basically the same as the definition provided for in the Western Reserve policies. Therefore, the definition in the Western Reserve policies is not contrary to R.C. 3937.18.
 {¶ 19} In sum, we find that Grimm's vehicle was not an underinsured motor vehicle as defined by the UIM provisions of the Western Reserve insurance policies. Furthermore, we find that such a definition is not contrary to the applicable statutory law. Accordingly, Schreck was not entitled to UIM coverage under the Western Reserve policies, and the trial court did not err in granting Western Reserve summary judgment. As a result, Schreck's sole assignment of error is overruled.
 {¶ 20} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Bryant, and Shaw, JJ., concur.
[1] Both Western Reserve policies went into effect prior to the current version of R.C. 3937.18. Therefore, we must apply the version of R.C.3937.18 that was in effect on date that the contracts were formed. Adamsv. Crider, 3rd Dist. Nos. 10-02-18, 10-02-19, at ¶ 11, citing Ross,
82 Ohio St.3d at the syllabus of the court. One policy went into effect on July 3, 2000. At that time, R.C. 3937.18 as amended by S.B. 57 was the applicable law. The other policy went into effect on September 23, 2000. The applicable law at that time was R.C. 3937.18 as amended by S.B. 267.
[2] The language of former R.C. 3937.18(A)(2) that is quoted in our opinion is essentially the same as the current language of R.C. 3937.18(C).