DECISION AND JUDGMENT ENTRY
{¶ 1} This matter comes before the court on appeal from the Williams County Court of Common Pleas wherein the court granted summary judgment to Clarion Plastics Technologies, et al. ("Clarion"). For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} This case results from a workplace injury sustained by appellant, Robbin Pettit. Pettit worked at Clarion's factory in 1998 and 1999 as a maintenance manager, and then from 2000 to 2002 as a maintenance technician. His job responsibilities included the repair and preventative maintenance of all equipment. On April 26, 2001, Pettit learned from co-worker James Anderson that an injection molding press, known as press No. 8, was not functioning properly. In order to make the needed repair, Pettit climbed on top of the press using the machine's built-in ladder, sat on the beam upon which the robotic arm tracks, and maneuvered out on the beam to the area near the robotic arm. While seated on the end of the beam, Pettit completed the repair. After finishing the repair, Pettit fell from the beam to the concrete floor approximately 12 feet below and severely injured himself.
 {¶ 3} On November 20, 2003, appellants, Robbin M. and Kelly J. Pettit, filed an intentional tort claim against Clarion. Appellants' argued that the only way to reach press No. 8 in order to repair it was to climb on to it. Thus, Clarion required Pettit to perform the repair with knowledge that it was dangerous. Clarion argued that they provided a forklift with a basket for such elevated repairs. The forklift and basket would have allowed Pettit to perform the repair safely. Clarion argued that because Pettit knew about the forklift and basket but refused to use it, they should not be held liable. On March 19, 2004, Clarion filed a motion for summary judgment which was granted on December 1, 2004. Appellants appeal that judgment setting forth the following assignment of error:
 {¶ 4} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT ON AN EMPLOYER INTENTIONAL TORT CLAIM WHEN MATERIAL FACTS ARE IN DISPUTE."
 {¶ 5} Civ.R. 56(C) provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law.Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. In reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129.
 {¶ 6} Although Ohio workers' compensation law generally provides employees with the sole means of compensation for injuries suffered within the scope of employment, where an employer's conduct is sufficiently egregious, an employee may bring an action against that employer for intentional tort. Goodin v. Columbia Gas of Ohio, Inc.
(2000), 141 Ohio App.3d 207, 214. This exception arises from the notion that where an employer's conduct is sufficiently egregious to constitute an intentional tort, the employer's act occurs outside the scope of employment. Id., at 215.
 {¶ 7} The law is well settled that in order to establish an employer intentional tort, an employee must demonstrate the following: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Hannah v. Dayton Power Light Co. (1998),82 Ohio St.3d 482, 484, 1998 Ohio 408 (quoting Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus).
 {¶ 8} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, supra, at paragraph two of the syllabus.
 {¶ 9} When considering whether an employer's conduct is sufficiently egregious to constitute an intentional tort, courts must refrain from construing the term "intentional tort" too broadly. Goodin, supra, at 215. As stated by the Supreme Court of Ohio in Van Fossen v. Babcock Wilcox (1988), 36 Ohio St.3d 100, 116, "* * * the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory frame work of the [Workers' Compensation] Act is not circumvented simply because a known risk later blossoms into reality. * * *'" Id. (citation omitted).
 {¶ 10} The court in Van Fossen went on to state:
 {¶ 11} "If `intentional wrong' is interpreted too broadly, this single exception would swallow up the entire `exclusivity' provision of the Act, since virtually all employee accidents, injuries, and sicknesses are a result of the employer or a co-employee intentionally acting to do whatever it is that may or may not lead to eventual injury or disease. Thus in setting an appropriate standard by which to measure an "intentional wrong," we are careful to keep an eye fixed on the obvious: the system of workers' compensation confronts head-on the unpleasant, even harsh, reality — but a reality nevertheless — that industry knowingly exposes workers to the risks of injury and disease." Id. (citation omitted).
 {¶ 12} In support of their motion for summary judgment, Clarion submitted the affidavit of James Anderson, a process engineer and co-worker of Pettits. Anderson testified that "typically" at Clarion, a forklift and basket combination was used to work on equipment or areas in the plant that a ladder could not reach. On April 26, 2001, Anderson testified that he saw Pettit sitting on the end of the robotic arm on press No. 8. Anderson told Pettit to get down and use the basket but, Anderson testified, Pettit ignored him. Clarion also submitted the affidavit of Richard V. Walle, a certified safety consultant. Walle testified that for approximately ten years he has been teaching companies how to keep employees from being injured. In 2004, he visited the Clarion factory and viewed the area where Pettit was injured. Specifically, he entered a basket attached to a forklift and was lifted to the area where Pettit performed his repairs on April 26, 2001. Walle testified that from his position in the basket, he could easily reach the control box and vacuum lines of the robotic arm, the area Pettit was required to repair. "[H]ad Mr. Pettit used the forklift and basket combination on the day of the accident, he could have safely made any needed repair on the beam and/or robotic arm control box without having to crawl out of the basket onto the robotic arm of the press."
 {¶ 13} In his deposition, Pettit testified that he received no specific instructions on how to go about repairing the No. 8 press. He further testified that at the time of his accident, Clarion offered no safety training for performing elevated repairs. Nor did they provide hard hats, safety harnesses or safety belts. Appellants' memorandum in opposition to Clarion's motion for summary judgment included the affidavit of Pettit wherein he testified that: (1) the forklift and basket provided by the company for repairs did not allow him to reach the area he was required to repair, (2) had he used the forklift and basket he still would have been forced to climb out of the basket and onto the beam in order to make the required repair, (3) a specific type of lift, a JLG lift, would have reached far enough for him to remain in the basket and make the required repair, (4) Clarion did not own a JLG lift, (4) Clarion's employees had previously informed Clarion of the need for a JLG lift for fall protection and, (5) despite knowing that a JLG lift was needed for fall protection, Clarion failed to provide a JLG lift for its employees.
 {¶ 14} The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist. Fullerv. German Motor Sales, Inc. (1988), 51 Ohio App.3d 101. Therefore, in determining a motion for summary judgment, a court does not try the issues of the credibility of the witnesses or weigh the evidence. Halleyv. Grant Trucking, Inc. (1990), 67 Ohio App.3d 357, 364, Paul v.Uniroyal Plastics Co. (1988), 62 Ohio App.3d 277.
 {¶ 15} In granting summary judgment to appellees, the trial court stated that "[I]t is clear that [Pettit] chose to conduct the repair in a manner which resulted in his own injury and which was contrary to the practice of the employer." Given the conflicting evidence before the court regarding the sufficiency of the forklift and basket, we find this statement by the court to be an improper credibility determination.
 {¶ 16} Upon a review of the deposition, affidavits, exhibits and, applying the standards of Fyffe v. Jeno's, Inc., we find that there exist material issues of fact as to whether or not the forklift and basket could safely reach elevated areas and whether or not Clarion provided appropriate fall-protection equipment for the repair Pettit was required to make. Accordingly, the judgment of the Williams County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this decision and judgment entry. Appellees are ordered to pay the costs of this appeal for which sum judgment is rendered against appellees on behalf of Williams County and for which execution is awarded. See App.R. 24.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Parish, J., concur.